Michael S. Davis
Anthony I. Giacobbe, Jr.
ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas, 40th Floor
New York, New York  10036
(212) 223-0400
mdavis@zeklaw.com
agiacobbe@zeklaw.com

*Attorneys for Petitioners*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., AMERICAN HOME ASSURANCE COMPANY, THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,<br><br>Petitioners,<br><br>- against -<br><br>BMC STOCK HOLDINGS, INC.,<br><br>Respondent. | Case No.: 1:18-cv-05777-RJS |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS'
PETITION TO COMPEL ARBITRATION**

ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400

967604v8

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 3
    The Payment Dispute Between National Union and BMC .................................................. 3
    BMC's Improper California Action........................................................................................ 3
    The Broad Arbitration Agreement ......................................................................................... 4
    The "Forum Clause" Requires Any Action or Proceeding Concerning
    Arbitrability Only Be in New York ....................................................................................... 5

ARGUMENT ............................................................................................................................. 6

I.    THE "FIRST-TO-FILE" RULE IS INAPPLICABLE BECAUSE THE
    FORUM CLAUSE REQUIRES THIS COURT TO DECIDE THIS
    MOTION .......................................................................................................................... 6

II.   THE "ARBITRATOR JURISDICTION" CLAUSE REQUIRES THAT
    ARBITRABILITY BE REFERRED TO THE ARBITRATORS ..................................... 7

III.  SHOULD THE COURT REACH THE QUESTION OF
    ARBITRABILITY, THE COURT SHOULD COMPEL ARBITRATION ....................... 9

IV.  CHARACTERIZING THIS DISPUTE AS A "COVERAGE" DISPUTE
    DOES NOT ALTER THAT ARBITRATION MUST BE COMPELLED ...................... 11

CONCLUSION ......................................................................................................................... 13

# TABLE OF AUTHORITIES

**Federal Cases**        **Page(s)**

Ace Capital Re Overseas Ltd. v. Central United Life Ins. Co.,
   307 F.3d 24 (2d Cir. 1994) ............................................................................. 10, 11

AT&T Techs. v. Communication Workers,
   475 U.S. 643 (1986) ............................................................................................ 13

Battaglia v. McKendry,
   233 F.3d 720 (3d Cir. 2000) ................................................................................ 11

Caldwell v. KFC Corp.,
   958 F. Supp. 962 (D.N.J. 1997) .......................................................................... 13

Contec Corp. v. Remote Solution Co. Ltd.,
   398 F.3d 205 (2d Cir. 2005) .................................................................................. 8

Dean Witter Reynolds, Inc. v. Byrd,
   470 U.S. 213 (1985) .............................................................................................. 9

Garten v. Kurth,
   265 F.3d 136 (2d Cir. 2001) ................................................................................ 10

Genesco, Inc. v. T. Kakuchi & Co.,
   815 F.2d 840 (2d Cir. 1987) ................................................................................ 10

Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.,
   246 F.3d 219 (2d Cir. 2001) ................................................................................ 10

Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,
   252 F.3d 218 (2d Cir. 2001) ......................................................................... 10, 11

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
   473 U.S. 614 (1985) ............................................................................................ 10

Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,
   460 U.S. 1 (1983) ............................................................................................ 9, 10

Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Champps Entm't, Inc.,
   No. 04-6163, 2004 WL 2884304 (S.D.N.Y. Dec. 14, 2004) .............................. 11

Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Las Vegas Professional Football L.P.,
   No. 09 Civ. 7490,
   2009 WL 4059174 (S.D.N.Y. Nov. 17, 2009) .................................................... 11

National Union Fire Insurance Company of Pittsburgh. Pa. v.
Las Vegas Professional Football Limited Partnership d/b/a/ Las Vegas Gladiators,
   409 Fed. Appx. 401, 2010 WL 5141229 (2d Cir. 2010) ................................... 6, 7

Oriental Republic of Uruguay v. Chem. Overseas Holdings, Inc.,
Nos. 05-civ-6151, 05-civ-6154,
    2006 WL 164967 (S.D.N.Y. Jan. 24, 2006) ............................................................. 8

Raytheon Company v. National Union Fire Insurance Company of Pittsburgh, Pa.,
    306 F.Supp.2d 346 (S.D.N.Y. 2004) ............................................................. passim

Rent-A-Center, West, Inc. v. Jackson,
    561 U.S. 63, 130 S.Ct. 2772 (2010) ..................................................................... 7

Shearson/American Express v. McMahon,
    482 U.S. 220 (1987) ............................................................................................. 9

## Federal Statutes

9 U.S.C. § 1 ............................................................................................................. 10
9 U.S.C. § 2 ............................................................................................................... 9

## State Cases

Epix Holdings Corp. v. Marsh & McLennan Companies, Inc.,
    420 N.J. Super. 453, 982 A.2d 1194 (App. Div. 2009) ................................... 11, 13

Life Receivables Trust v. Goshawk Syndicate 102 at Lloyd's,
    66 A.D.3d 495, 888 N.Y.S.2d 458 (1st Dep't 2009) ............................................. 8

Matter of Monarch Consulting, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa,
    26 N.Y.3d 659 (2016) ........................................................................................... 8

Nat'l Union Fire Ins. Co. v. Dyneer Corp.,
    798 N.Y.S.2d 346, 2004 WL 2093361 (Sup. Ct., N.Y. County July 22, 2004) ..... 11

Smith Barney Shearson Inc. v. Sacharow,
    91 N.Y.2d 39 (1997) ....................................................................................... 8, 10

Petitioners National Union Fire Insurance Company of Pittsburgh, Pa., American Home Assurance Company and The Insurance Company of the State of Pennsylvania, (collectively, "National Union") respectfully moves to compel arbitration of a dispute with Respondent BMC Stock Holdings, Inc. ("BMC"), as successor by merger to insured Building Materials Holding Corporation ("BMHC").

## PRELIMINARY STATEMENT

This is an action to compel arbitration of a dispute (the "Dispute") between BMC and National Union, where BMC has commenced an action in California seeking to resolve the Dispute, despite governing contractual provisions that expressly provide (i) the Dispute is subject to arbitration; (ii) the arbitrators have the exclusive jurisdiction to decide arbitrability; and (iii) any judicial proceeding concerning arbitrability may be brought only in the City, County and State of New York.

The Dispute arose from an insurance program (the "Insurance Program") provided by National Union for the benefit of BMHC and other additional insured parties ("Additional Insureds"). A key element of the Insurance Program was an undertaking by BMHC (now BMC by merger) to reimburse certain losses and expenses that accrued under the Insurance Program, including losses paid for the benefit of Additional Insureds. As part of that reimbursement obligation, the parties entered into a Payment Agreement dated as of November 11, 2003 (the "Payment Agreement") together with certain addenda and schedules (collectively with the Payment Agreement, the "Agreement").[1]

---

[1] The Agreement is annexed to National Union's Petition at **Exhibit A**. The pages are numbered A0001 to A0076. All references herein to Exhibits, refers to the Exhibits to the Petition.

In 2017, National Union billed BMC for certain reimbursement obligations concerning Additional Insureds, and BMC refused to pay $1,010,609.76 of the billed amount, claiming certain Additional Insureds were not entitled to coverage under the Insurance Program. BMC brought the Dispute in a California lawsuit (the "California Action") seeking a ruling that these particular Additional Insureds are not entitled to coverage. Of course, BMC ordinarily would have no standing to bring a coverage action where the only parties with an interest in coverage are the Additional Insureds and National Union. Plainly, BMC's interest in the Dispute is derived from its duty to reimburse, and is thus subject to arbitration.

This case is indistinguishable from Raytheon Company v. National Union Fire Insurance Company of Pittsburgh, Pa., 306 F.Supp.2d 346 (S.D.N.Y. 2004) ("Raytheon"), where this Court (Scheindlin, J.) confronted another two-state attempt by an insured to avoid arbitration under a substantially similar arbitration agreement. The Court held that despite the "first-to-file" (or "first-filed") rule, it was this Court's responsibility to refer the threshold issue of arbitrability to the arbitrators. Indeed, in Raytheon, the insured, as BMC does here, attempted to argue that the reimbursement dispute was merely a coverage dispute, an argument that Judge Scheindlin squarely rejected.

Here, as in Raytheon, this Court need not address the issue of arbitrability. Rather, this Court should submit that threshold issue to the arbitrators as provided for in the Agreement.

## STATEMENT OF FACTS

### The Payment Dispute Between National Union and BMC

Pursuant to the Insurance Program first adopted in 2003, National Union issued policies that provide coverage to BMC and to certain Additional Insureds, and BMC's predecessor BMHC agreed to reimburse certain retained deductible amounts. National Union defended claims asserted against these Additional Insureds and billed BMC for BMC's reimbursement obligations. In particular National Union sent invoices to BMC in 2017 and BMC paid certain undisputed portions of these invoices. BMC, however, disputed the remaining amounts by letter dated February 9, 2018, and refused to pay $1,010,609.76. (Exhibit E) National Union responded by letter dated April 26, 2018 and requested a further reply by May 29, 2018. (Exhibit E).

Given BMC's refusal to reimburse, an actual dispute exists concerning the amount of BMC's Payment Obligation.[2] As shown below, this dispute is subject to arbitration.

### BMC's Improper California Action

In violation of the Agreement's arbitration clause, on May 29, 2018 BMC filed the California Action. (Exhibit B). BMC admits in its California complaint that National Union defended and made payments on behalf of Additional Insureds who claimed coverage under policies issued under the Insurance Program. BMC does not challenge that it generally has a duty to reimburse National Union for Additional Insureds' coverage, but BMC contends that

---

[2] "*Your* **Payment Obligation**" is defined in the Agreement and includes "*Deductible Loss Reimbursements*". Exhibit A, page (A0004).

3

coverage was improperly provided to certain specific Additional Insureds it disputes. BMC alleges that for this reason it is not required to reimburse National Union.

Simultaneous with commencement of this action in New York, National Union served a Demand for Arbitration. (Exhibit D).

**The Broad Arbitration Agreement**

The Payment Agreement contains a broad arbitration clause (the "Arbitration Clause") (A0008-0009), which includes three separate provisions pursuant to which BMC must arbitrate the Dispute.

First, the Arbitration Clause provides for arbitration of any dispute regarding BMC's Payment Obligation. The Payment Agreement provides:

> **HOW WILL DISAGREEMENTS BE RESOLVED?**
> **What if we disagree about payment due?**
>
> <u>If *You* disagree with us about any amount of *Your Payment Obligation*</u> that we have asked *You* to pay, within the time allowed for payment *You* must:
>
> - give us written particulars about the items with which *You* disagree; and
>
> - pay those items with which *You* do not disagree.
>
> <u>. . . Any disputed items not resolved within 60 days after our response to *Your* written particulars must immediately be submitted to arbitration</u> as set forth below.

(A0008.) (Emphasis added.)

Second, in the event this is not broad enough to encompass the Dispute, there is a further provision that:

> **What about disputes other than disputes about payment due?**
>
> Any other unresolved dispute arising out of this Agreement must be submitted to arbitration.

(A0008.) (Emphases added.)

Third, the arbitration panel has "exclusive jurisdiction" over the entire matter, including any threshold question as to arbitrability:

> They [the arbitrators] "will have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability."

(A009) (the "Arbitrator Jurisdiction" clause) (Emphasis added).

**The "Forum Clause" Requires Any Action or Proceeding Concerning Arbitrability Only Be in New York**

This action to compel arbitration belongs only in New York. A separately written and signed Addendum to the Payment Agreement includes the following:

> **How arbitrators must be chosen:** *You* must choose one arbitrator and we must choose another. They will choose the third. If *You* or we refuse or neglect to appoint an arbitrator within 30 days after written notice from the other party requesting it to do so, or if the two arbitrators fail to agree on a third arbitrator within 30 days of their appointment, either party may make application only to a court of competent jurisdiction in the City, County, and State of New York. Similarly, any action or proceeding concerning arbitrability, including motions to compel or to stay arbitration, may be brought only in a court of competent jurisdiction in the City, County, and State of New York.

5

(The "Forum Clause", emphasis added) (A0034).

## ARGUMENT

I. **THE "FIRST-TO-FILE" RULE IS INAPPLICABLE BECAUSE THE FORUM CLAUSE REQUIRES THIS COURT TO DECIDE THIS MOTION**

Because the Forum Clause provides that "any action or proceeding concerning arbitrability, including motions to compel or to stay arbitration, may be brought <u>only</u> in a court of competent jurisdiction in the City, County and State of New York" (A0031) (emphasis added), this Court should decide this matter, and no consideration should be given to either the California Action or the so-called first-to-file rule. In <u>Raytheon</u>, Judge Scheindlin explained that following the first-filed rule "would contravene the policies embodied in the FAA to penalize the party seeking to compel arbitration in accordance with the terms of an arbitration agreement." <u>Raytheon</u>, supra, 306 F.Supp.2d 346 at 355 (footnote omitted).

The Second Circuit, in a case with the same Forum Clause as this case, later adopted the same result in <u>National Union Fire Insurance Company of Pittsburgh, Pa. v. Las Vegas Professional Football Limited Partnership d/b/a/ Las Vegas Gladiators</u>, 409 Fed. Appx. 401, 2010 WL 5141229 (2d Cir. 2010). The Circuit Court held:

> The district court also properly determined that the first filed rule did not apply. "Where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience in favor of the second action, or unless there are special circumstances which justify giving priority to the second." <u>Motion Picture Lab. Technicians Local 780, L.A. T.S.E. v. McGregor & Werner, Inc. 804 F.2d 16, 19 (2d Cir. 1986)</u> (citation and quotation omitted). <u>Forum shopping is one of those special circumstances. Id.</u> see also <u>New York Marine and Gen. Ins. Co. v. Lafarge N. Am., Inc. 599 F.3d 102, 113.</u> (New York choice of law clause and Southern District of New York forum selection clause

> favor disregarding first-filed rule). Here, the Payment Addendum contains a forum clause providing that "any action or proceeding concerning arbitrability, including motions to compel or stay arbitration, may be brought only in the City, County and State of New York." Thus, the district court rightly concluded that the proper venue for any action involving the arbitrability of the agreement was in New York, because it is what the parties agreed to. There was no error.

Id., at 403. (Emphasis added.)

Accordingly, the Forum Clause governs the issue of this Court's jurisdiction and provides that the first-to-file rule is inapplicable.

## II. THE "ARBITRATOR JURISDICTION" CLAUSE REQUIRES THAT ARBITRABILITY BE REFERRED TO THE ARBITRATORS

"[P]arties to an agreement may provide that arbitrators will decide questions of arbitrability." Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 72, 130 S.Ct. 2772, 2781 (2010). Moreover, the Arbitrator Jurisdiction clause, as noted above, has been specifically enforced by this Court in the Raytheon case, supra. ("This is a classic question of the arbitrability of the issues raised in the Demand for Arbitration. Here, that question must be resolved by the arbitrators.").[3] Similarly, BMHC and National Union took this extra step, agreeing to arbitrate the threshold question of arbitrability. This agreement should be enforced by the Court.

Indeed, the Court's analysis should end here, and the matter referred to arbitration and the arbitrators who are specifically tasked with deciding "questions of arbitrability." See,

---

[3] The Raytheon case has many similarities to this case, including that the insured brought a prior action in another state, and the insured sought to characterize the dispute as a coverage dispute rather than a reimbursement dispute. Judge Scheindlin explained that the first-to-file rule ought not deprive the court of jurisdiction in the venue chosen for arbitration (306 F.Supp.2d 352-56) and, as further addressed below, that a reimbursement dispute would not be deemed a coverage dispute (306 F.Supp.2d 356-57).

7

e.g., Contec Corp. v. Remote Solution Co. Ltd., 398 F.3d 205, 211 (2d Cir. 2005) (compelling arbitration of arbitrability where agreement provided "clear and unmistakable evidence" the parties intended arbitrators to decide arbitrability); Oriental Republic of Uruguay v. Chem. Overseas Holdings, Inc., Nos. 05-civ-6151, 05-civ-6154, 2006 WL 164967, *7 (S.D.N.Y. Jan. 24, 2006) ("as long as the Court is satisfied that the parties agreed to arbitrate a particular dispute, including a question of arbitrability, it must enforce the parties' agreement and submit the matter to arbitration"); Smith Barney Shearson Inc. v. Sacharow, 91 N.Y.2d 39, 46 (1997) (holding that "the words 'any and all' are elastic enough to encompass disputes over . . . whether a claim is within the scope of arbitration"); Life Receivables Trust v. Goshawk Syndicate 102 at Lloyd's, 66 A.D.3d 495, 888 N.Y.S.2d 458, 459 (1st Dep't 2009) (enforcing parties' agreement to arbitrate issues of arbitrability).

Much as this Court did in Raytheon in 2004, twelve years later, in 2016, the New York Court of Appeals specifically upheld the same Arbitrator Jurisdiction clause, in the same form of Agreement which is at issue in this case. Matter of Monarch Consulting, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa, 26 N.Y.3d 659 (2016). In Monarch, the insured tried to argue that the Payment Agreement was not an enforceable agreement. In response, the New York Court of Appeals held that, under the FAA, the Arbitrator Jurisdiction clause must be enforced and only the arbitrators are to decide all issues related to arbitrability. The Court said:

> The Supreme Court has also held that arbitration agreements must be enforced according to their terms, and that "parties can agree to arbitrate 'gateway' questions of 'arbitrability'" (Rent-ACenter, West, Inc., 561 US at 68-69; see Nitro-Lift Technologies, L.L.C., 568 US at , 133 S Ct at 503; Buckeye Check Cashing, Inc., 546 US at 445). Such "delegation clauses" are enforceable where "there is 'clea[r] and unmistakabl[e]' evidence" that the parties intended to arbitrate arbitrability issues (First Options of Chicago, Inc., 514 US at 944, quoting AT&T Technologies, Inc., 475 US at 649). "When

8

> deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts" (First Options of Chicago, Inc., 514 US at 944).

National Union respectfully submits that, as the respective courts in Raytheon and Monarch held, the provision that the arbitrators – and not a court – shall decide "any questions as to arbitrability" is controlling and compels that National Union's petition be granted.

### III. SHOULD THE COURT REACH THE QUESTION OF ARBITRABILITY, THE COURT SHOULD COMPEL ARBITRATION

Section 2 of the FAA states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, <u>shall be valid, irrevocable, and enforceable</u>, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). The Supreme Court has unambiguously upheld this provision. See, e.g., Shearson/American Express v. McMahon, 482 U.S. 220, 226-27, (1987); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 220 (1985). To the extent doubt exists concerning arbitrability, the Supreme Court has directed that any such doubt be resolved <u>in favor of</u> arbitration. Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983).

The Second Circuit also consistently enforces arbitration agreements:

> The FAA, codified at 9 U.S.C. §§1-14, provides that written provisions to arbitrate controversies in any contract involving interstate commerce 'shall be valid, irrevocable, and enforceable,

9

> save upon such grounds as exist at law or in equity for the revocation of any contract.' Id. §2. 'There is a strong federal policy favoring arbitration as an alternative means of dispute resolution.' In accordance with that policy, where, as here, the existence of an arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability.

Ace Capital Re Overseas Ltd. v. Central United Life Ins. Co., 307 F.3d 24, 29 (2d Cir. 1994) (citing Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001)). See also Garten v. Kurth, 265 F.3d 136, 142 (2d Cir. 2001) ("Under the FAA, courts are required generally to resolve questions of arbitrability in favor of arbitration."); Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 223 (2d Cir. 2001) ("It is familiar law that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (1994) (Arbitration Act), expresses 'a liberal federal policy favoring arbitration agreements' and that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" (citing Moses H. Cone, supra, at 24-25); Smith Barney Shearson Inc. v. Sacharow, 91 N.Y.2d 39, 49-50 ("New York courts interfere as little as possible with the freedom of consenting parties to submit disputes to arbitration"). In determining the scope of an arbitration agreement, a court must "focus on the factual allegations in the complaint rather than the legal causes of action asserted." Genesco, Inc. v. T. Kakuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987). If these factual allegations so much as "'touch matters' covered by the parties' contract, then those claims must be arbitrated, whatever the legal labels attached to them." Id. (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985)).

The Second Circuit in Louis Dreyfus Negoce S.A. established that, in determining whether a particular dispute falls within the scope of an arbitration agreement, this Court should first classify the arbitration clause as broad or narrow. 252 F.3d at 224; Ace Capital Re Overseas

10

Ltd., 307 F.3d at 30-34. Importantly, in construing the very "arising out of" arbitration clause language at issue here, New York courts have not hesitated to classify the clause as broad, resolve any doubts as to arbitrability in favor of arbitration, and order the dispute to arbitration. See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Las Vegas Professional Football L.P., No. 09 Civ. 7490 (PKC), 2009 WL 4059174 (S.D.N.Y. Nov. 17, 2009) (holding that National Union's "arising out of" arbitration clause is "broad"; granting National Union's motion to compel arbitration); Raytheon, supra, (National Union's "arising out of" arbitration clause "is indisputably a broad arbitration clause"; granting National Union's motion to compel arbitration); Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Champps Entm't, Inc., No. 04-6163, 2004 WL 2884304 (S.D.N.Y. Dec. 14, 2004) (compelling arbitration of all disputes); Nat'l Union Fire Ins. Co. v. Dyneer Corp., 798 N.Y.S.2d 346, 2004 WL 2093361 (Sup. Ct., N.Y. County July 22, 2004) (affirming court's prior decision to appoint umpire pursuant to arbitration agreement).[4]

National Union respectfully submits that these decisions resolve the matter, and that their reasoning compels arbitration of the instant dispute between BMC and National Union.

### IV. CHARACTERIZING THIS DISPUTE AS A "COVERAGE" DISPUTE DOES NOT ALTER THAT ARBITRATION MUST BE COMPELLED

BMC wishes to characterize this dispute as a coverage dispute rather than a reimbursement dispute, but BMC has not been denied any insurance coverage, and the applicable basis on which BMC has standing to dispute the coverage National Union is providing to the

---

[4] Accord Battaglia v. McKendry, 233 F.3d 720, 727 (3d Cir. 2000) ("when phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction and are generally construed to encompass claims going to the formation of the underlying agreements"); Epix Holdings Corp. v. Marsh & McLennan Companies, Inc., 420 N.J. Super. 453, 982 A.2d 1194, 1211 (App. Div. 2009) (holding National Union's "arising out of" arbitration clause to be "broad," and requiring all disputes arbitrated).

Additional Insureds is to claim that such coverage triggers its Payment Obligation under the Payment Agreement. This dispute, therefore, is entirely about BMC's Payment Obligation.

The District Court in <u>Raytheon</u>, <u>supra</u>, squarely considered and rejected the very same argument BMC asserts here, where Raytheon sought to characterize the dispute as a coverage dispute rather than a reimbursement dispute, stating:

> The broad arbitration clause is limited only by the requirement that the dispute arise out of the Payment Agreement or any related transaction. Raytheon argues that the instant dispute concerning claims under the Master Policy does not fall within the arbitration clause, as it relates to *coverage* under insurance policies issued by National Union, rather than Raytheon's *payment* obligations under the Payment Agreement. <u>National Union, however, points out that "this dispute is a reimbursement dispute, [which] is at the heart of what the Payment Agreement is all about." This is a classic question of the arbitrability of the issues raised in the Demand for Arbitration. Here, that question must be resolved by the arbitrators.</u>

<u>Raytheon</u>, 306 F.Supp.2d 356-57. (Emphasis added.) The same rationale applies here and for the very same reason BMC's assertion should be rejected.

Further, if the difference between the parties' positions is merely a characterization of the Dispute (i.e., a "coverage dispute" vs. a "reimbursement dispute"), then the presumption in favor of arbitration certainly should control:

> In determining whether a dispute falls within the scope of an arbitration clause, courts operate under a "presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of any interpretation that covers the asserted dispute."

<u>Epix Holdings Corp. v. Marsh & McLennan Companies, Inc.</u>, 420 N.J. Super. 453, 471, 982 A.2d 1194, 1205 (App. Div. 2009) (quoting <u>Caldwell v. KFC Corp.</u>, 958 F. Supp. 962, 973

(D.N.J. 1997)); AT&T Techs. v. Communication Workers, 475 U.S. 643, 650 (1986) (same). This is particularly true here, because the parties expressly agreed that the arbitrators "will have exclusive jurisdiction over the entire matter in dispute, including any questions as to arbitrability." See Argument, Point I, supra. (Emphasis added.)

But even if the Court were to continue its analysis (which it need not), BMC's claims fall squarely within the broad terms of the instant arbitration agreement and must be arbitrated. As detailed above, all of BMC's claims and allegations against National Union are raised for the purpose of defeating BMC's reimbursement payment obligation, and reimbursement disputes must be arbitrated. Further, "any other unresolved dispute arising out of" the Payment Agreement also must be arbitrated.

For all the foregoing reasons, the Court should compel arbitration of this dispute.

## CONCLUSION

National Union respectfully requests that the Court compel respondent BMC to

arbitrate its dispute with National Union, and that the issue of arbitrability be referred to the arbitrators.

Dated:   New York, New York
         July 13, 2018

                                          ZEICHNER ELLMAN & KRAUSE LLP

                                          By: /s/ Michael S. Davis
                                          Michael S. Davis
                                          Anthony I. Giacobbe, Jr.
                                          *Attorneys for Petitioners*
                                          1211 Avenue of the Americas
                                          New York, New York 10036
                                          (212) 223-0400
                                          mdavis@zeklaw.com
                                          agiacobbe@zeklaw.com