Allen R. Wolff
Ethan W. Middlebrooks
ANDERSON KILL, P.C.
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 278-1000
Facsimile: (212) 278-1733
E-mail: awolff@andersonkill.com

*Attorneys for Respondent*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., AMERICAN HOME ASSURANCE COMPANY, THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, | *Case No. : 1:18-cv-05777-RJS* |
| Petitioners, | |
| -against- | |
| BMC STOCK HOLDINGS, INC., | |
| Respondent. | |

## BMC STOCK HOLDING INC.'S MEMORANDUM OF LAW
## IN OPPOSITION TO PETITION TO COMPEL ARBITRATION AND IN SUPPORT OF
## CROSS-MOTION TO DISMISS THE PETITION

**Anderson Kill, P.C.**
**1251 Avenue of the Americas**
**New York, NY 10020**
**Telephone: (212) 278-1000**

# TABLE OF CONTENTS

Page

I.     Introduction .................................................................................................... 1

II.    Factual Background and Procedural History ................................................... 2

III.   Argument ........................................................................................................ 6

       A.     Standard of Review Under the Federal Arbitration Act ........................................ 6

       B.     Proper And Good Faith Coverage Under the Insurance Policies Is a Threshold
              Question To Be Determined Before the Payment Agreement Is Triggered ........... 7

       C.     *Raytheon* Is Distinguishable ................................................................. 12

       D.     AIG's Other Cited Case Law Is Inapposite ......................................................... 16

       E.     The Payment Agreement's Arbitration Clause Is Not So Broad As To
              Encompass All Disputes Under the Insurance Policies ........................................ 17

       F.     Arbitrators Do Not Have Exclusive Jurisdiction Over Any Question As To
              Arbitrability, And Have No Jurisdiction Over Policy Coverage Matters. ............. 19

IV.    AIG's Petition Should Be Dismissed For Lack of Ripeness ........................................... 20

V.     Conclusion ..................................................................................................... 21

docs-100022397.7

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*151 W. Assocs. v. Printsiples Fabric Corp.*,
  61 N.Y.2d 732 (1984) ..................................................................................................19

*AIU Ins. Co. v. Superior Court of Santa Clara County*, 51 Cal. 3d 807 (1990) ............................10

*Aloha Petroleum, Ltd. v. Nat'l Union Fire Ins. Co.*,
  25 F. Supp. 3d 1305 (D. Hawaii 2014) .............................................................................8, 17

*Alticor, Inv. v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*,
  411 F.3d 669 (6th Cir. 2005) ..........................................................................................8, 9

*AT&T Commc'ns Workers of Am.*, 475 U.S. 643 (1986) ............................................................17

*BMC Stock Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, et al.*,
  No. 2:18-cv-4726 (C.D. Cal. filed May 29, 2018) ....................................................................2

*Clear Channel Outdoor, Inc. v. City of New York*,
  608 F. Supp. 2d 477 (S.D.N.Y. 2009) .................................................................................20

*EEOC v. Waffle House, Inc.*,
  534 U.S. 279 (2002) ..................................................................................................17, 18

*Exari Sys. v. Amazon Corp. LLC*,
  No. 15-cv-356, 2015 U.S. Dist. LEXIS 89364, 2015 WL 4164834
  (W.D. Wash. July 9. 2015) .............................................................................................7, 11

*Kilgore v. KeyBank, N.A.*,
  718 F.3d 1052 (9th Cir. 2013) ...........................................................................................7

*McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*,
  858 F.2d 825 (2d Cir. 1987) .......................................................................................6, 17, 19

*Minkler v. Safeco Ins. Co. of Am.*,
  49 Cal. 4th 315 (2010) ..................................................................................................19

*Nat'l Union Fire Ins. Co. v. Champps Entm't, Inc.*,
  No. 04-cv-6163, 2004 U.S. Dist. LEXIS 25052, 2004 WL 2884304 (S.D.N.Y.
  Dec. 13, 2004) ........................................................................................................15, 16

*Nat'l Union Fire Ins. Co. v. Las Vegas Prof'l Football L.P.*
  409 Fed. Appx. 401 (2d Cir. 2010) ....................................................................................16

ii

## TABLE OF AUTHORITIES
### *continued*

**Page(s)**

*Nat'l Union Fire Ins. Co. v. Las Vegas Prof'l Football L.P.,*
    No, 09-cv-7490, 2009 U.S. Dist. LEXIS 108315, 2009 WL 4059174
    (S.D.N.Y. Nov. 17, 2009) ...................................................................................15, 16

*National Union Fire Insurance Company of Pittsburgh, P.A. v. Dyneer
    Corporation,*
    4 Misc. 3d 1024(A) (N.Y. Sup. Ct. N.Y. Cnty. 2004) ............................................15

*Raytheon Co. v. National Union Fire Insurance Company,*
    306 F. Supp. 2d 346 (S.D.N.Y. 2004).............................................................. *passim*

*Readick v. Avis Budget Group, Inc.,*
    2014 U.S. Dist. LEXIS 58784, 2014 WL 1683799 (S.D.N.Y. April 25, 2014) ......................12

*Robert McMullan & Son, Inc. v. U.S. Fid. & Guar. Co.,*
    103 Cal. App. 3d 198 (1980) ...................................................................................6

*Turner Constr. Co. v. Navigators Ins. Co.,*
    No. 157322/13, 2015 N.Y. Misc. LEXIS 2704, 2015 N.Y. Slip. Op. 31353 (U)
    (N.Y. Sup. Ct. July 23, 2015) ...................................................................................6

*UMG Recordings, Inc. v. Am. Home Assur. Co.,*
    378 Fed. Appx. 766 (9th Cir. 2010)................................................................. *passim*

*VAM Check Cashing Corp. v. Fed. Ins. Co.,*
    699 F.3d 727 (2d Cir. 2012).................................................................................10, 12

*Volt Info. Scis. v. Bd. of Trs.,*
    489 U.S. 468 (1989)..................................................................................................18

**Statutes**

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ....................................................... *passim*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.; AMERICAN HOME ASSURANCE COMPANY; and THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,<br><br>Petitioners,<br><br>v.<br><br>BMC STOCK HOLDINGS, INC.,<br><br>Respondent. | No. 1:18-cv-05777-RJS<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO THE MEMORANDUM OF LAW IN SUPPORT OF PETITION TO COMPEL ARBITRATION, AND IN SUPPORT OF CROSS-MOTION TO DISMISS THE PETITION** |

**I.      Introduction**

Respondent BMC Stock Holdings, Inc. ("BMC") files this memorandum in opposition to the Memorandum of Law in Support of Petition To Compel Arbitration (the "Motion") by Petitioners National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), American Home Assurance Company ("AHA") and The Insurance Company of the State of Pennsylvania ("ICSOP") (National Union, AHA and ICSOP, collectively, "AIG"), and cross moves to dismiss AIG's Petition because the issues raised by AIG are not yet ripe.

In its premature Petition and Motion, AIG has attempted to leapfrog over insurance coverage issues that must first be determined pursuant to four fronting general liability policies issued to BMC's predecessor Building Materials Holding Corporation (the "Policies").[1]  The Policies do not contain any provisions regarding arbitration.  AIG therefore has made its arbitration demand solely in reliance on a clause set forth in an altogether separate contract that relates only to payment issues and has no role in coverage determinations under the Policies.

---

[1] The Policies are attached as Exhibits A – D to the accompanying Declaration of Maureen Thomas.

That separate contract, entitled "Payment Agreement" concerns itself not with the coverage obligations owed by AIG under the four insurance policies, but instead addresses reimbursement to AIG of certain costs after coverage is properly extended pursuant to the four insurance policies.

Whether the Payment Agreement will ultimately be relevant to this dispute is a secondary matter for decision. Coverage under the Policies is the threshold issue. BMC has alleged in its first-filed matter in the United States District Court for the Central District of California on May 29, 2018 (the "California Action")[2], that AIG has breached the Policies and its duty of good faith and fair dealing by failing to meaningfully investigate claims for coverage by purported additional insureds, and by extending coverage to additional insureds without confirming that any of the Policies apply to those additional insureds, while passing along the risk and expense of those coverage determinations to its policyholder BMC. Those coverage determinations under the Policies are questions that must be determined by a Court prior to the triggering of any duties or rights under the Payment Agreement. AIG has attempted to obscure this distinction by folding all coverage matters into the umbrella of a generalized "payment dispute," and by forum shopping. For the reasons that follow, the Court should deny AIG's request to jump to arbitration and either dismiss or stay the Petition until after the necessary coverage determinations have been resolved in the first-filed coverage Action.

## II.    Factual Background and Procedural History[3]

BMC is the successor to Building Materials Holding Corporation, a building materials company that provides residential building products (supply) and construction services (services)

---

[2] *BMC Stock Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, et al.*, No. 2:18-cv-4726 (C.D. Cal. filed May 29, 2018).

[3] BMC respectfully refers the Court to the filings and exhibits thereto in this matter for further detail on the background facts.

2

to builders and contractors throughout the United States, particularly in the American West. To meet insurance requirements, BMC purchased, among other insurance policies, four fronting general liability Policies from AIG. A fronting policy is, in effect, a form of self-insurance, with a third-party insurance company extending coverage if and when the grounds for coverage are established. If the insurance company pays coverage on behalf of its policyholder or on behalf of an additional insured under a fronting policy, the insurance company will seek reimbursement for the fronted costs of coverage from its policyholder.

The fronting Policies BMC purchased from AIG were for the time periods November 11, 2003 to November 11, 2004, and November 11, 2004 to November 11, 2005. Two of the Policies covered construction services (services), one policy for each year (Thomas Aff., Exs, A and C, while the other two Policies covered BMC's retail operations (supply), again one policy for each year. Thomas Aff., Exs. B and D. The two services Policies contain wrap exclusions, which exclude coverage for any projects or contracts covered by a wrap insurance program. There are no such wrap exclusions in the supply Policies. *See* Thomas Aff., Exs. B and D, Petition Ex. B (California Complaint) at ¶ 22 (citing Policy Nos. 933-29-02 and 694-60-10 at Form No. CG 21 54 01 96).

The Policies also include additional insured endorsements for Completed Operations coverage. The language in these Completed Operations endorsements differs across the Policies, depending on whether the Policy is for services or is for supply, and they also differ by the applicable policy period. *See* Petition Ex. B (California Complaint) at ¶¶ 23-30 (comparing policy language in different Policies).

In 2009, BMC declared bankruptcy. Since that bankruptcy, the only new claims presented to AIG under the Policies have been for purported additional insured coverage for

3

construction defect actions asserted against the purported additional insured.  BMC is not and has not been involved in any of those underlying actions.  AIG has nonetheless paid defense costs to certain purported additional insureds under the Policies and claimed that such coverage was properly extended, demanding repayment for those costs from BMC.  BMC has, over multiple years, complained to AIG that the AIG adjusters handling additional insured claims were failing to properly investigate those claims and were improperly extending coverage benefits under the Policies.

AIG has repeatedly failed to provide BMC a meaningful response to coverage inquiries, instead responding with demands for repayment from BMC.  As BMC has not been involved in the litigation underlying the additional insured claims, AIG has been BMC's sole source of information from which to confirm that coverage was properly provided.  BMC has repeatedly requested documentation from AIG concerning the coverage it extended to additional insureds, but AIG has failed to provide this documentation.  AIG has pressed BMC to repay it for coverage extended to purported additional insureds even in instances where AIG cannot demonstrate that it undertook an adequate investigation of the claim and where AIG cannot produce documentary evidence confirming that the Policies even applied to the claim.  In fact, for the bulk of the claims that BMC is now disputing, it appears that AIG failed even to confirm that BMC actually performed work on the specific homes that were the subject of the underlying construction defect litigation.  BMC therefore commenced the pending California Action in which it has asserted that AIG owes BMC a duty to adequately investigate and adjust additional insured claims to ensure: (1) that BMC supplied materials or performed work on the homes involved in the underlying lawsuit; and (2) that the complained-of homes were completed during

4

one of the BMC policy periods; and (3) that BMC's work or materials were asserted to be defective; and (4) that no policy exclusions apply to bar additional insured coverage.

In the California Action, BMC requested a judicial declaration: that AIG has duties to BMC under the Policies; that AIG breached those duties; that BMC is entitled to continuing relief as to AIG's ongoing duties in the investigation and adjustment of claims under the Policies; and that AIG has failed to uphold its duty of good faith and fair dealing in its investigations pertaining to purported additional insureds.

On the same day that BMC filed its Complaint in the California Action, counsel for BMC provided counsel for AIG with a courtesy copy of the Complaint. AIG's counsel subsequently requested that BMC grant an extension of time by thirty days until July 20 to respond to BMC's Complaint in the California action. AIG made no disclosure that the extension was actually sought for the purpose of commencing an intervening action by order to show cause in New York. The courtesy of an extension was therefore given by BMC without condition. AIG then exploited that courtesy by manufacturing this challenge to the first-filed rule. AIG filed its Petition in this Court claiming that a separate Payment Agreement – which contains an arbitration provision but which is triggered only when AIG has properly and in good faith extended coverage under one of the Policies -- requires BMC's coverage dispute to be arbitrated.

The Payment Agreement's arbitration clause provides as follows:

**What if we disagree about payment due?**

If *You* disagree with us about any amount of *Your Payment Obligation* that we have asked *You* to pay, within the time allowed for payment *You* must:

Give us written particulars about the items with which You disagree;

....

5

Any disputed items not resolved within 60 days after our responses to *Your* written

particulars must immediately be submitted to arbitration as set forth below.

….

**What about disputes other than disputes about payment due?**

Any other unresolved dispute arising out of ***this Agreement*** must be submitted to

arbitration.

*See* Petition Ex. A (Payment Agreement) (emphasis added with bold italics).

The Payment Agreement's arbitration clause does not contain any language mandating

arbitration for disputes regarding rights and duties under the insurance Policies (and likewise, the

Policies contain no arbitration provisions). Further, the Payment Agreement does not contain

any provision regarding choice of law.[4]

## III.   Argument

### A.   Standard of Review Under the Federal Arbitration Act

The standards under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, are

applicable here. Despite the federal policy generally favoring arbitration, Courts retain

discretion to determine whether an agreement to arbitrate is even at issue, and then, if some but

not all claims are arbitrable, whether to stay the entirety of the proceedings pending arbitration.

---

[4] The Payment Agreement only states that any actions to compel arbitration, or to decide on an appropriate arbitrator, are to be brought in a Court in New York City, New York County, and New York State. All of the contracts here—including the Policies and the Payment Agreement—were negotiated and delivered in California. California law therefore applies to the contractual issues therein. *See Robert McMullan & Son, Inc. v. U.S. Fid. & Guar. Co.*, 103 Cal. App. 3d 198, 204-05 (1980) (citing Restatement (Second ) of Conflict of Laws, which considers factors such as "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties"); *Turner Constr. Co. v. Navigators Ins. Co.*, No. 157322/13, 2015 N.Y. Misc. LEXIS 2704, at *11-12, 2015 N.Y. Slip. Op. 31353 (U) at 8-9 (N.Y. Sup. Ct. July 23, 2015) (setting forth New York's similar test for contracts). AIG appears to agree with the controlling nature of California law, as indicated in its letter dated April 26, 2018. *See* California Complaint, Ex. C.

*See McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1987) ("First, [the court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration."); *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013) ("The basic role for courts under the FAA is to determine '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" (citation omitted)); *see also Exari Sys. v. Amazon Corp. LLC*, No. 15-cv-356, 2015 U.S. Dist. LEXIS 89364, at *7-8, 2015 WL 4164834 (W.D. Wash. July 9. 2015) (staying request for arbitration on a finding that the agreement containing the arbitration provision was not at issue and that resolution first required a determination of breach of another agreement without an arbitration provision, and in any event, any arbitrable claims did not predominate and arbitrable claims likely depended on the outcome of non-arbitrable breach claims first).

### B.   Proper And Good Faith Coverage Under the Insurance Policies Is a Threshold Question To Be Determined Before the Payment Agreement Is Triggered

Despite AIG's attempts to construe the Policies as some joint contract with the Payment Agreement under the umbrella of an "Insurance Program", the Payment Agreement is actually a separate agreement entered between AIG and BMC.  The Payment Agreement concerns reimbursements to be made by BMC to AIG for amounts properly extended as insurance coverage under one of the four Policies.  The Payment Agreement sets forth the methods of billing and payment and the procedure if there is a dispute as to reimbursement of amounts properly paid by AIG under the insurance Policies.  Meanwhile, the Policies concern insurance

7

that BMC purchased from AIG, which in certain proven instances may be extended to additional insureds. Coverage under the Policies is a necessary pre-condition to triggering the Payment Agreements.

Indeed, when no insurance Policy applies to a claim, then there can be no generated cost—thus meaning that the Payment Agreement is never triggered. BMC has alleged in the California Action that AIG has not demonstrated coverage for specifically identified purported additional insureds under the Policies.

This dispute is not a matter of first impression, and numerous Courts have found that where coverage matters under insurance policies are in dispute, then the insurance policies control, not AIG's payment agreement(s). *See, e.g.*, *Alticor, Inv. v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, 411 F.3d 669, 670-74 (6th Cir. 2005); *UMG Recordings, Inc. v. Am. Home Assur. Co.*, 378 Fed. Appx. 766, 767 (9th Cir. 2010); *Aloha Petroleum, Ltd. v. Nat'l Union Fire Ins. Co.*, 25 F. Supp. 3d 1305, 1313-15 (D. Hawaii 2014). "It is the insurance polic[ies], not the Premium Payment Agreement, that defines the parties' substantive rights and duties under the polic[ies]." *Alticor*, 411 F.3d at 671. A dispute over the Policies here "does not become a 'simple payment dispute' merely because the outcome affects reimbursements." *Aloha Petroleum*, 25 F. Supp. 3d at 1313. In other words, "enforcing the terms of the GL Policy is not a mere 'payment dispute,' or disagreement regarding 'amounts' 'arising out' of the Payment Agreement." *Id.* [5]

---

[5] The discussion of these issues in *Aloha Petroleum*, 25 F. Supp. 3d at 1313-15, while lengthy, is highly illuminating:

> National Union's characterization of this action as a simple payment dispute, in which National Union is seeking the monies it is owed under the Payment Agreement, is without merit. . . .Interpreting the GL Policy and Endorsements is a prerequisite to calculating the amount due to National Union. Moreover, none of the disputes . . . challenge National

8

Additionally, this is not a situation where only a single insurance policy is at issue, or where AIG has paid insurance coverage to defend BMC itself against claims. Here, BMC has

---

Union's mathematical calculation of . . . defense costs or otherwise relate to the interpretation or performance of the Payment Agreement. A dispute over the terms of the GL Policy does not become a simple payment dispute merely because the outcome effects reimbursement. That is, voiding or enforcing the terms of the GL Policy is not a mere payment dispute, or disagreement regarding amounts arising out of the Payment Agreement. . . .The Payment Agreement does not determine the scope of Aloha's obligations to reimburse National Union — the GL Policy does. Other courts considering the same language in the Payment Agreement have reached the same conclusion in similar circumstances. In *Alticor, Inc. v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, 411 F.3d 669 (6th Cir.2005), the Sixth Circuit held that the parties' dispute over whether Alticor was required to pay a deductible for the defense provided by National Union was not arbitrable, because the dispute involved issues arising under the insurance policy and not the separate payment agreement. The Sixth Circuit explained that, [i]t is the insurance policy, not the Premium Payment Agreement, that defines the parties' substantive rights and duties under the policy . . . If National Union had intended to subject [the] dispute to the arbitration provision, it could easily, clearly and unequivocally have done so, either by including an arbitration provision in the insurance policy itself, or by adding to the above arbitration provision, after the words `arising out of or relating to this Agreement,' words such as `or involving the meaning or application of any provision of the insurance policy.' *Id.* at 672. . . . Similarly, in *UMG Recordings, Inc. et al. v. Am. Home Assurance Co.*, No. CV 07-3257 GAF (AGRx) (C.D.Cal. Nov. 3, 2008), the district court concluded that insurance policy disputes, such as disputes over ALAE reimbursement obligations, do not arise out of the payment agreement. *UMG Order* at 6. It noted that, although the Payment Agreements are directly linked to UMG's reimbursement obligations, the Payment Agreements largely concern the mode and manner of carrying out UMG's payment obligations under the Policies and the consequences for failing to satisfy those obligations. Accordingly, the district court found that the mandatory arbitration provision therefore does not extend to disputes, such as the one in the present case, concerning the validity or applicability of ALAE reimbursement obligations. *Id.* On appeal of the order denying the insurer's motion to stay proceedings pending arbitration, the Ninth Circuit recognized that the underlying dispute does not arise out of the payment agreements and therefore is not subject to the mandatory arbitration provisions. *UMG Recordings, Inc. v. Am. Home Assur. Co.*, 378 Fed.Appx. 766, 767 (9th Cir.2010).

9

alleged that AIG has been making, and based on its history will continue to make, payments on

behalf of purported additional insureds, without an adequate investigation that even one of the

Policies applies to cover that additional insured.  But BMC's Policies cannot be triggered except

in certain circumstances—*inter alia*, the operations were completed during an applicable Policy

period; the work complained of was BMC's and was defective; and no exclusion applies to any

of the Policies.  These are coverage determinations that occupy a threshold position to payment

under the Policies, thereby making them a necessary prerequisite to AIG's claimed rights to

reimbursement under the Payment Agreement.

      Further, the plain language of the Payment Agreement states the obvious: the Payment

Agreement is inapplicable when AIG has negligently or in bad faith advanced payments ***under***

***the Policies***.  *See* Petition Ex. A (Payment Agreement) at p. 4 ("You must abide by the results

under this Agreement of any payment of Loss or ALAE that the claims service provider or we

shall have made *in the absence of negligence and in good faith under any of the Policies*.")

(emphasis added); *VAM Check Cashing Corp. v. Fed. Ins. Co.*, 699 F.3d 727, 729 (2d Cir. 2012)

("Under New York insurance law, the plain language of an insurance policy, read in light of

common speech and the reasonable expectations of a businessperson, will govern if the language

is unambiguous") (internal citations omitted); *AIU Ins. Co. v. Superior Court of Santa Clara*

*County*, 51 Cal. 3d 807, 821-22 (1990) (clear and explicit meaning of written provisions of an

insurance contract, interpreted in their ordinary and popular sense, unless used by the parties in a

technical sense or a special meaning is given to them by usage, controls judicial interpretation).

In situations where AIG has made voluntary payments under the Policies, AIG is not permitted

to, and can have no reasonable expectation to, collect repayment of those sums from BMC.  The

repayment provision quoted above from the Payment Agreement expressly recognizes that

questions as to AIG's negligence or good faith in extending coverage under the Policies are to be determined "under [] the Policies." If there is a finding of improper payment and/or bad faith, then no rights to repayment under the Payment Agreement are ever triggered. *See UMG Recordings*, 378 Fed. Appx. at 767 ("UMG's contention that it might not be obligated to perform in full its duties under the policies if American Home acted in bad faith does not transform those claims into disputes 'arising out of' the payment agreements.").

The bad faith and breach of contract alleged by BMC in the California Action arise under the *Policies*, not the Payment Agreement. *See UMG Recordings*, 378 Fed. Appx. at 767. The Policies are the contracts at issue and the rights and duties under them must be adjudicated before the Payment Agreement and any duties thereunder are triggered. The Policies contain no arbitration provisions and the arbitration provision in the Payment Agreement is limited to disputes under the Payment Agreement. Proper insurance coverage under the Policies is a condition precedent to AIG's right to reimbursements from BMC for insurance coverage. Accordingly, the coverage issues alleged by BMC in the California Action must be resolved prior to any litigation or arbitration about payment disputes under the Payment Agreement. Thus, AIG's request for arbitration is premature and should be denied.

Moreover, BMC expects that resolving the coverage dispute presented in the California Action will dispose of the claims that AIG seeks to arbitrate. If it is determined that AIG has properly extended coverage, then BMC will have to perform under the Payment Agreement. AIG itself has acknowledged that in the past, BMC has made repayment when coverage has not been disputed. *See* Petition, ¶ 19 ("BMC paid certain undisputed portions of such invoices"). But if it is found that AIG acted improperly in extending coverage to purported additional insureds, then there will be no triggering of the Payment Agreement or its arbitration provision.

Either way, any need for arbitration would likely be rendered moot by the decisions reached in the California Action. *See, e.g., Exari Sys.*, 2015 U.S. Dist. LEXIS 89364, at *7-8, 2015 WL 4164834.

On the other hand, if this Court were to permit arbitration to proceed now, the arbitrators may find themselves unable or unwilling to proceed because they face issues that exceed their authority, or that require threshold determinations that must first be resolved in the California Action. This would further delay the resolution of the dispute and be a waste of resources. *See Readick v. Avis Budget Group, Inc.*, 2014 U.S. Dist. LEXIS 58784, at *15, 2014 WL 1683799 (S.D.N.Y. April 25, 2014) ([C]onsiderations of judicial economy are frequently viewed as relevant to the public interest, and, as noted, they weigh against the investment of court resources that may prove to have been unnecessary). Therefore, this Court should deny AIG's request for arbitration because the Central District of California must first resolve threshold coverage matters.

### C.   *Raytheon* Is Distinguishable

In both its Petition and Memorandum, AIG has claimed that the present matter is "indistinguishable" from the decision in *Raytheon Co. v. National Union Fire Insurance Company*, 306 F. Supp. 2d 346 (S.D.N.Y. 2004). Although there are certain similarities – both cases involve National Union, a distinct payment agreement separate from the insurance policies, and a bankruptcy of certain named policyholders of those policies – the similarities stop there and bear little resemblance to the issues presented here.

In *Raytheon*, unlike here, the arbitration provision mandated arbitration for disputes that "arise[] about th[e payment] agreement *or any transaction related to it.*" *Id.* (emphasis added). Compare the present Payment Agreement's arbitration provision: "Any other unresolved dispute arising out of **this Agreement**." Petition Ex. A (Payment Agreement) at p. 4 (emphasis added).

12

The arbitration provision drafted by AIG in *Raytheon* is significantly broader than that drafted by AIG in this matter.  In *Raytheon*, by its plain language, the arbitration clause extended beyond the four corners of the payment agreement at issue there.  *VAM Check Cashing Corp.*, 699 F.3d at 729.  The decision in *Raytheon* expressly notes that the breadth of the arbitration clause used by AIG in that matter was determinative.  *See Raytheon*, 306 F. Supp. 2d at 356.  The arbitration clause used by AIG in this matter is different.  Here, the plain language of the arbitration clause in the Payment Agreement is limited to disputes within the four corners of the Payment Agreement.[6]

Raytheon* did not involve the extension of additional insured coverage.  The dispute at issue in *Raytheon* arose after the policyholder spun off three subsidiaries covered under the National Union insurance policies sold to the policyholder.  *See Raytheon*, 306 F. Supp. 2d at 350-51.  The policyholder and those former subsidiaries continued to manage the defense of insurance claims.  *See id.* at 351.  As such, they were not dependent on AIG's good faith to respect their interests in coverage determinations, as BMC has been in this matter.  The *Raytheon* case's subsidiaries subsequently filed bankruptcy, at which point both those former subsidiaries and the policyholder stopped paying the insurance claims.  *See id.*  It was unpaid claims for entities already known to be covered by the National Union insurance policies that were at issue

---

[6] In *Raytheon*, AIG used a broadened arbitration clause that expressly extended to related transactions.  Whether, had it been used by AIG in the present matter, that broader arbitration clause would have extended to the arbitration of coverage determinations under the Policies here is a question that the Court need not reach.  It is certain that the present arbitration clause does not extend to "related transactions" and that it is confined to "this [the Payment] Agreement."  To hold otherwise would set up any ensuing arbitration for failure under the Federal Arbitration Act which provides that an arbitration award shall be vacated upon a showing that the arbitrators exceeded their powers.  FAA, 9 U.S.C. § 10(a)(4).  Because arbitration is permitted only to the extent of the agreement between the parties, coverage disputes arising under the terms and conditions of the four insurance Policies cannot be swept into the ambit of an arbitration clause that, by its own terms, is confined to payment disputes arising out of a separate and distinct Payment Agreement.

13

in *Raytheon*, not claims for purported additional insureds under a completed operations endorsement that has yet to be shown to be applicable. For such issues, BMC has retained its right to seek declaratory relief in the courts and has not consigned that right to arbitration.

Further, here, BMC was not made aware of newly asserted claims until AIG sought collection for such claims. That did not occur until approximately ten years following BMC's purchase of the Policies. In the intervening time, unlike *Raytheon*, AIG managed the defense of alleged claims by purported additional insureds. Based on the materials that AIG has heretofore provided to BMC, AIG appears to have extended coverage on the flimsiest of suggestions by purported additional insureds that coverage was owed under these Policies, expecting that BMC, not AIG, would be the bill payer. But no such coverage should have been extended unless, at a minimum, AIG first investigated and confirmed that the claims resulted from BMC's completed work during an applicable Policy period without any Policy exclusion applying. BMC has not been acting as the manager of defense coverage under the Policies because no claims have been permitted to proceed against BMC as a result of its 2009 bankruptcy.

AIG also clumsily fashions an argument out of *Raytheon* in support of its challenge to the first-filed doctrine. On the one hand, in *Raytheon*, unlike here, the plaintiff policyholder filed both a claimed coverage action in Massachusetts and a petition regarding arbitration in the S.D.N.Y. *See Raytheon*, 306 F. Supp. 2d at 354. In the present matter, however, BMC properly first filed its Complaint in the jurisdiction with the greatest contacts to the underlying coverage matters, that being the federal court in California. The litigation brought by BMC in California is not a mere payment dispute as it was in *Raytheon*. Accordingly, this situation differs from *Raytheon*, and contrary to AIG's arguments, there was no first-filed arbitration demand followed by a court action to compel arbitration in the S.D.N.Y. or New York State Supreme Court.

*Compare Raytheon*, 306 F. Supp. 2d at 354-55.  Here, in distinction to the events present in *Raytheon*, AIG made tactical advantage of an adjournment of the first-filed California action, by using that courtesy to seek accelerated relief in this Court by Order to Show Cause.  That was an obvious attempt to short circuit the orderly progress of the first-filed action in California and a clear effort to compel arbitration before the court in California could address the matter as it saw fit.  This Court previously declined to indulge such procedural interventions when AIG sought an order to show cause and the Court should continue to deny such efforts until the threshold coverage question has been decided in the California action.  AIG is forum shopping in an attempt to force coverage determinations into arbitration, when those determinations are not subject to arbitration and when the conditions precedent for arbitration have not yet been satisfied.

Moreover, as the Court states in *Raytheon*, "[j]udicial efficiency mandates that the matter be decided at the *earliest* possible time." 306 F. Supp. 2d at 354.  As set forth above, if this Court were to order arbitration of any of the matters currently pending before the court in California, the arbitrators would (or, pursuant to the FAA, certainly *should*) determine that jurisdiction is lacking and/or that the claims are prematurely in arbitration, thus requiring adjudication in the California Action first.  Should the arbitration proceed now and include matters currently pending before the Central District of California, the result of any such arbitration would be suspect due to the vacatur standards of the Federal Arbitration Act.  In the event of vacatur, the arbitration process would have to start all over again.  Either way, efficiency and fairness dictate that the California Action be allowed to proceed and that any arbitration ensue only after that court rules.

15

### D.    AIG's Other Cited Case Law Is Inapposite

AIG is not helped by either *Nat'l Union Fire Ins. Co. v. Champps Entm't, Inc.*, No. 04-

cv-6163, 2004 U.S. Dist. LEXIS 25052, 2004 WL 2884304 (S.D.N.Y. Dec. 13, 2004) or by *Nat'l*

*Union Fire Ins. Co. v. Las Vegas Prof'l Football L.P.*, No, 09-cv-7490, 2009 U.S. Dist. LEXIS

108315, 2009 WL 4059174 (S.D.N.Y. Nov. 17, 2009), both cited in its Memorandum.[7]

*Champps Entertainment* is distinguishable because the dispute involved specific matters clearly

arising out of the payment agreement—that is, the letter of credit required as security under the

payment agreement. *See* 2004 U.S. Dist. LEXIS 25052, at *9.  No such issues are present here.

In *Las Vegas Professional Football*, the "insurance program" related to a workers compensation

insurance policy that did not involve any coverage determinations, only payment issues. *See*

2009 U.S. Dist. LEXIS 108315, at *2.  The policyholder's action sought completely different

relief.  There the policyholder wanted to enjoin National Union from drawing on the line of

credit that the policyholder had been required to post pursuant to the payment agreement, as well

as a declaration that the policyholder "is not obligated to pay" a certain final premium amount or

a deductible amount. *See id.* at *12-13.  The policyholder had alleged an underlying controversy

between it and National Union over the "manner in which AIG determined" amounts claimed to

be due for reimbursement. *Id.* at *5.  On appeal, the Second Circuit ruled against the

policyholder for a reason that has no connection to the circumstances of the present matter: "The

problem for the [policyholder] is a simple one: they did not raise their challenge to the

enforceability of the arbitration clauses in their original opposition to the motion to compel."

*Nat'l Union Fire Ins. Co. v. Las Vegas Prof'l Football L.P.* 409 Fed. Appx. 401, 402 (2d Cir.

---

[7] AIG's cited New York Supreme Court decision, *National Union Fire Insurance Company of Pittsburgh, P.A. v. Dyneer Corporation*, 4 Misc. 3d 1024(A) (N.Y. Sup. Ct. N.Y. Cnty. 2004), is not relevant to the present dispute.  There, the issue concerned the qualification of an arbitrator over an arbitration to which the policyholder had consented. *See* 4 Misc. 3d at 1024(A), at *1.

16

2010). But here BMC disputes arbitrability and has sought judicial declaratory relief because AIG has not demonstrated the existence of coverage under any of the four insurance Policies; AIG has breached the Policies' terms; and AIG has acted in bad faith toward BMC under the Policies.

BMC has not alleged a dispute over how repayment amounts were calculated, or any other matters under the Payment Agreement.  The dispute here is whether coverage was properly extended to purported additional insureds under the Policies.  "The Payment Agreement does not determine the scope of [the policyholder's] obligations to reimburse National Union — the GL Policy does.  Other courts considering the same language in the Payment Agreement have reached the same conclusion in similar circumstances." *Aloha Petroleum*, 25 F. Supp. 3d at 1314 *citing Alticor, Inc. v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, 411 F.3d 669 (6th Cir.2005) *and UMG Recordings, Inc. v. Am. Home Assur. Co.*, 378 Fed.Appx. 766 (9th Cir. 2010).  AIG's request to compel arbitration should be denied.

### E.    The Payment Agreement's Arbitration Clause Is Not So Broad As To Encompass All Disputes Under the Insurance Policies

As follows from above, the arbitration provision in the Payment Agreement here is not as elastic as AIG claims.  Although that provision applies to disputes *arising under the Payment Agreement*, it does ***not*** extend to other contracts such as the Policies.  The Policies contain no clause mandating arbitration, and BMC has never agreed to arbitrate Policy disputes. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).  Under the FAA, arbitration "is a matter of consent, not coercion" as AIG would have it be here. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (citing *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 479 (1989)).

17

In construing the scope of the arbitration provision in the Payment Agreement, the Court "must be careful to carry out the specific and limited intent of the parties." *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988) (citation omitted).  AIG was the drafter of the Policies and the Payment Agreement.  It chose what words to include, and what words to omit.  AIG was also the author of the arbitration provision in *Raytheon*.  As demonstrated in *Raytheon*, when intended, AIG has shown itself capable of drafting broad arbitration provisions encompassing both payment disputes and "related transactions" which the court in *Raytheon* held extended arbitration to an insurance policy.  306 F. Supp. 2d at 356-58. AIG did not include such language in the Payment Agreement here.  Accordingly, AIG has not shown that the arbitration clause in the Payment Agreement in this matter can be extended to coverage determinations under the Policies.

"[The FAA] simply requires courts to enforce privately negotiated agreements, like other contracts, in accordance with their terms"—but not more so.  *Volt Info. Scis.*, 489 U.S. at 478.  If AIG wished to arbitrate coverage disputes, it could have included language into the Policies or broader language in the Payment Agreement.  But AIG did not do so.  Thus, the FAA does not compel arbitration here.

The reach of the arbitration provision in the Payment Agreement is, by its plain language, limited to the four corners of the Payment Agreement and does not extend to coverage matters under the insurance Policies.  As the Supreme Court has stated, Courts "do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated."  *EEOC*, 534 U.S. at 294.  Therefore, this Court should deny AIG's request to compel arbitration now and permit BMC to proceed with the coverage matter first filed in the Central District of California.

**F.  Arbitrators Do Not Have Exclusive Jurisdiction Over Any Question As To Arbitrability, And Have No Jurisdiction Over Policy Coverage Matters.**

AIG claims that only arbitrators may decide any dispute or question as to arbitrability. AIG is incorrect.

The arbitration provision here is limited to disputes arising under the Payment Agreement, and does not mention the Policies.  The Policies contain no arbitration provisions. Thus, there is no basis for arbitrators to decide anything regarding coverage matters under the Policies.  Arbitrators have no authority whatsoever to decide whether coverage disputes should be arbitrated because coverage disputes are beyond the plain language of the arbitration provision in the Payment Agreement.  AIG drafted the arbitration provision.  *See 151 W. Assocs. v. Printsiples Fabric Corp.*, 61 N.Y.2d 732, 734 (1984) (setting forth rule of *contra proferentum*); *Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 321 (2010) (same).  As the master of the language AIG included, it must be held to that language.

Moreover, the Payment Agreement's plain language betrays AIG's arguments in other ways.  The Payment Agreement states that "any action or proceeding concerning arbitrability . . . may be brought ***only in a court*** of competent jurisdiction in the City, County, and State of New York."  Payment Agreement at ¶5 (emphasis added).   If an "action or proceeding concerning arbitrability" may only be brought in a Court, then an arbitrator cannot decide questions as to arbitrability.  *Id.  See also UMG Recordings*, 378 Fed. Appx. at 767.  The plain language that AIG wrote into the arbitration provision of the Payment Agreement demonstrates that a Court may decide questions as to whether a matter is proper for arbitration.

Further, controlling case law is clear that a District Court always has the discretion to determine whether an agreement containing an arbitration clause is even the agreement actually at issue.  *See McDonnell Douglas*, 858 F.2d at 830.  Because the ***Policies*** are presently at issue,

19

and whether AIG breached them and acted in bad faith thereunder, and because the *Policies* contain no arbitration provisions, arbitration is improper at this time. This court may read and interpret the plain language chosen by AIG and inserted into the Payment Agreement, and determine whether any of the issues alleged by BMC in the first-filed California Action are arbitrable. They are not and the Court should therefore deny AIG's Motion.

## IV.    AIG's Petition Should Be Dismissed For Lack of Ripeness

AIG has prematurely filed its Petition and sought to compel arbitration when the contract containing the only available arbitration provision is not yet, and may never be, implicated. AIG's Petition and the dispute presently before this Court is not yet ripe for adjudication. *See Clear Channel Outdoor, Inc. v. City of New York*, 608 F. Supp. 2d 477, 500 (S.D.N.Y. 2009) (The determination of prudential ripeness triggers a two-step inquiry, evaluating both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration). BMC requests that this Court dismiss AIG's Petition for lack of ripeness.

Indeed, respectfully, this dispute as presented by AIG is not before the correct Court. BMC brought its coverage litigation in the California Action nearly one month prior to AIG's filing of its Petition in this Court. The California Action concerns threshold coverage issues under the Policies that must be adjudicated before any dispute raised by AIG pursuant to the Payment Agreement can actually arise. This is why BMC's initial California action was properly the first-filed matter and it is why AIG's suggestion that the first-filed rule be ignored is incorrect. The basis of the present dispute between BMC and AIG is a coverage determination, with related bad faith claims. That undeniable truth confirms that BMC's first-filed judicial proceeding was correctly first brought in the forum with the greatest connection to the claims.

As set forth above, the Payment Agreement cannot be triggered unless coverage under the Policies has properly been extended to purported additional insureds. This is not a matter

20

that can be resolved in arbitration; it is a matter for the Court in the California Action to decide. If, in the California Action, the court finds that coverage has been or is proper in any instance, then the parties' obligations under the Payment Agreement arise. Should that happen and BMC wishes to challenge specific amounts or the manner of repayment pursuant to the terms of the Payment Agreement, the arbitration provision in the Payment Agreement would only then be implicated. But for now, AIG's arbitration request is not yet ripe, and should be denied, and its Petition dismissed.

## V.  Conclusion

AIG has improperly and prematurely filed its Petition and Motion to Compel Arbitration, knowing that the insurance coverage dispute under the Policies first filed by BMC in the Central District of California must be resolved before any matters as to reimbursements under the Payment Agreement arise. BMC thus respectfully requests that this Court deny AIG's Motion to Compel Arbitration and dismiss its Petition as not yet ripe, or, in the alternative, stay AIG's request for arbitration pending the outcome of the litigation properly first filed by BMC in the Central District of California.

Dated: August 3, 2018

**ANDERSON KILL P.C.**

By: _____

Allen R. Wolff, Esq.
Ethan W. Middlebrooks, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 278-1000
Facsimile: (212) 278-1733
E-mail: awolff@andersonkill.com

*Attorneys for BMC Stock Holdings, Inc.*

21