UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, *et al.*,

                      Petitioners,

-v-

BMC STOCK HOLDINGS, INC.,

                      Respondent.

18-CV-5777 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

On June 26, 2018, insurance providers National Union Fire Insurance Company of Pittsburgh, PA; American Home Assurance Company; and the Insurance Company of the State of Pennsylvania (collectively, "National Union") filed a petition in this Court, seeking to compel BMC Stock Holdings, Inc. ("BMC"), the successor by merger to one of their insureds, to arbitrate certain claims that BMC has filed against National Union in a pending lawsuit in the United States District Court for the Central District of California (the "California Action"). (Dkt. No. 1.) On August 3, 2018, BMC cross-moved to dismiss National Union's petition. (Dkt. No. 21.) For the reasons that follow, National Union's petition is granted and BMC's cross-motion is denied.

**I. Background**

The following facts are drawn from BMC's complaint in the California Action (Dkt. No. 1-2 ("Cal. Compl.")), and the underlying insurance documents themselves.

    **A.**    **The Insurance Policies and Payment Agreement**

BMC is a building-materials company that provides construction products and services to builders and contractors. (Cal. Compl. ¶ 14.) From November 11, 2003, to November 11, 2005,

1

BMC's predecessor, Building Materials Holding Corporation ("BMHC"), was covered by a set of four general-liability insurance policies (collectively, the "Policies") issued by National Union. (Cal. Compl. ¶¶ 10, 18; *see also* Dkt. Nos. 22-1, 22-2, 22-3, 22-4.) Under the Policies—each of which was a type of self-insurance policy known as a "fronting" policy—National Union extended coverage to BMHC and to certain additional entities that held contracts with BMHC (the "Additional Insureds"), while BMHC was responsible for reimbursing National Union for the costs of coverage. (Cal. Compl. ¶¶ 15–17, 23–28.) Generally speaking, National Union's obligations under the Policies included coverage for litigation costs the Additional Insureds might incur in defending against certain legal claims brought by third parties, so long as those claims related to products or services provided by BMHC. (Cal. Compl. ¶¶ 29–33.) But because of BMHC's reimbursement responsibilities under the Policies, the only substantial risk National Union faced in providing coverage to the Additional Insureds was the risk that BMHC might prove unwilling or unable to pay up. (Cal. Compl. ¶ 14.)

In recognition of that risk, the parties executed a Payment Agreement. (*See* Dkt. No. 1-1.) Under this Agreement, National Union agreed "to provide [BMHC] insurance and services according to the *Policies*," and BMHC agreed "to pay [National Union] all [BMHC's] *Payment Obligation*," defined in relevant part as "the amounts that [BMHC] must pay [National Union] for the insurance and services in accordance with the terms of the *Policies*." (Dkt. No. 1-1 at A0003–0004.) The Payment Agreement also laid out a dispute-resolution mechanism for those cases in which BMHC might "disagree[] with [National Union] about any amount of [the] *Payment Obligation* that [National Union] ha[s] asked [it] to pay." (Dkt. No. 1-1 at A0008.) In such instances, the Agreement directed BMHC to provide National Union with "written particulars" describing any disputed charges, and to pay all other charges without delay. (*Id.*) If,

2

following an exchange of correspondence, a dispute remained, the Payment Agreement provided that any disputed items "must immediately be submitted to arbitration." (*Id.*) As for "disputes other than disputes about payment due," the Agreement provided that "[a]ny other unresolved dispute arising out of this Agreement must be submitted to arbitration." (*Id.*) Finally, the Agreement contemplated that the arbitrators would "have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability." (Dkt. No. 1-1 at A0009.)

B. The California Action

Following BMHC's 2009 bankruptcy, its successor by merger, BMC, began to voice concern to National Union about National Union's supposed failure to adequately investigate claims for coverage submitted by Additional Insureds. (Cal. Compl. ¶ 36, 40.) According to BMC, National Union was in the habit of paying these claims—and then seeking reimbursement from BMC—without a sufficient basis for establishing that the claims actually fell within the scope of the Policies. (Cal. Compl. ¶ 40.) After National Union failed to respond to BMC's concerns, BMC refused to reimburse National Union for a number of coverage claims that National Union had paid out to Additional Insureds. (Cal. Compl. ¶ 41–43.)

BMC's actions prompted National Union to supply BMC with the documentation that supported its determination that it had properly paid the coverage claims disputed by BMC. (Cal. Compl. ¶ 44.) Upon receiving this documentation, BMC reimbursed National Union for certain coverage claims that BMC agreed National Union had rightly paid under the Policies. (*Id.*) With respect to eleven coverage claims totaling over $1 million, however, BMC found the proffered documentation insufficient to establish that National Union had appropriately provided coverage. (Cal. Compl. ¶¶ 45–47.) On February 9, 2018, BMC declined to reimburse National Union for these eleven claims absent additional documentation establishing that the claims fell

within the scope of the Policies.  (Cal. Compl. ¶ 47.)  For its part, though, National Union continued to request reimbursement.  (Cal. Compl. ¶ 48.)

In response, BMC filed the California Action on May 29, 2018.  Alleging a "controversy . . . between [National Union] and [BMC] as to certain rights and the scope of insurance coverage under BMHC's four fronting insurance policies" (Cal. Compl. ¶ 60), BMC's complaint in that Action seeks (1) a declaratory judgment that National Union inadequately investigated the eleven coverage claims at issue and that BMC therefore owes National Union no reimbursement for those claims (Cal. Compl. ¶¶ 59–64); (2) damages arising out of National Union's alleged breach of the Policies (Cal. Compl. ¶¶ 65–72); (3) damages arising out of National Union's alleged breach of the duty of good faith and fair dealing (Cal. Compl. ¶¶ 73–92); and (4) an accounting of any additional reimbursement obligations National Union claims BMC has incurred pursuant to the Policies since September 30, 2017 (Cal. Compl. ¶¶ 93–98).

### C. The Present Action

On June 1, 2018, after BMC had filed its complaint in the California Action, National Union requested that BMC withdraw the complaint and submit its claims to arbitration pursuant to the Payment Agreement.  (Dkt. No. 1-3 at 1.)  In response, BMC contended that the claims in its complaint are "coverage disputes arising out of the insurance Policies" and are therefore not subject to the arbitration provision contained in the "separate and independent Payment Agreement that governs the *calculation* of reimbursement" after the *fact* of a reimbursement obligation has been established under the Policies.  (Dkt. No. 1-3 at 5–6 (emphasis added)).

Thereafter, on June 26, 2018, National Union served BMC with a demand for arbitration (Dkt. No. 1-4) and initiated the present action in this Court by filing a Petition to Compel Arbitration (Dkt. No. 1).  BMC responded on August 3, 2018, with an opposition and cross-

4

motion for dismissal of National Union's petition. (Dkt. No. 21.) The petition and cross-motion have now been fully briefed (Dkt. Nos. 17, 21, 24) and are fit for resolution.[1]

## II. Legal Standard

Under Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–14, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction [over the underlying controversy] for an order directing that such arbitration proceed in the manner provided for in such agreement," *id.* § 4. "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

To determine whether to send a dispute to arbitration pursuant to Section 4, a court must determine "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (omission in original) (quoting *Nat'l Union Fire Ins. Co. v. Belco Petrol. Corp.*, 88 F.3d 129, 135 (2d Cir. 1996)). These "threshold question[s]" of arbitrability are generally answered by applying state contract law.[2] *Nicosia v. Amazon.com,*

---

[1] National Union has filed a motion in the California Action requesting a stay of that Action pending this Court's ruling on its Petition to Compel Arbitration. (Dkt. No. 25.) As of November 20, 2018, the California court had not ruled on National Union's stay motion. (Dkt. No. 27.)

[2] BMC contends, and National Union apparently agrees, that California law governs the interpretation of the Policies and Payment Agreement at issue in this case. (Dkt. No. 21 at 6 n.4.) This Court therefore applies California contract law. *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) ("[I]mplied consent is . . . sufficient to establish the

5

*Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). But to the extent that ambiguity remains following the application of state law, the "strong federal policy in favor of arbitration" embodied in the FAA, *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006), directs that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

There are some circumstances, however, in which it is not for a court to decide these threshold questions at all. "[P]arties," after all, "can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). That said, "[c]ourts should not assume that the parties agreed" to send such questions to arbitration "unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (alterations in original) (quoting *AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

**III.  Discussion**

Before turning to the question of whether the claims raised by BMC in the California Action should be resolved in arbitration, this Court must consider whether, as National Union contends, the parties have clearly and unmistakably referred resolution of that question to the arbitrators. (Dkt. No. 17 at 7–9.) Here, the Payment Agreement requires the arbitration of disagreements "about any amount of [the insured's] *Payment Obligation*" or "[a]ny other unresolved dispute arising out of th[e] Agreement" (Dkt. No. 1-1 at A0008) and goes on to provide that the arbitrators "will have exclusive jurisdiction over the entire matter in dispute,

---

applicable choice of law." (quoting *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001))).

6

including any question as to its arbitrability" (Dkt. No. 1-1 at A0009). This language, National Union contends, clearly and unmistakably establishes that the parties intended the question of whether the instant dispute concerns the amount of BMC's "*Payment Obligation*" or otherwise arises out of the Payment Agreement to be resolved in arbitration.

Had the "exclusive jurisdiction" provision been the Payment Agreement's last word on questions of arbitrability, this Court may well have agreed with National Union that the Agreement clearly and unmistakably refers such questions to arbitration. *See Raytheon Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 306 F. Supp. 2d 346, 356–58 (S.D.N.Y. 2004) (holding that a similar provision clearly and unmistakably referred issues of arbitrability to arbitration). But a 2004 Addendum to the Payment Agreement provides that "any action or proceeding concerning arbitrability, including motions . . . to stay arbitration, may be brought only in a court of competent jurisdiction in the City, County, and State of New York." (Dkt. No. 1-1 at A0031.)

The parties, in other words, contemplated that a court might in certain instances decide whether a given dispute had been properly submitted to arbitration. Because the Payment Agreement offers no guidance for determining which questions of arbitrability shall be judicially resolved, and which questions of arbitrability fall within the purview of the arbitrators, this Court cannot conclude that the arbitrability issues presented here are clearly and unmistakably of the latter sort. *See UMG Recordings, Inc. v. Am. Home Assurance Co.*, 378 F. App'x 766, 767 (9th Cir. 2010) (refusing to compel arbitration of arbitrability issues where the relevant agreement "state[d] that arbitrators have exclusive jurisdiction to resolve questions of arbitrability, but . . . also state[d] that actions concerning arbitrability must be brought in New York courts").

The Court therefore turns to the question of whether the parties have agreed to arbitrate the issues raised by BMC in the California Action.[3]

As an initial matter, it is undisputed that the Payment Agreement contains "a valid agreement to arbitrate" certain disputes. *Hartford Accident & Indem. Co.*, 246 F.3d at 226. The Agreement provides that any disputes "about any amount of [the insured's] *Payment Obligation* . . . must immediately be submitted to arbitration" if they cannot be resolved informally, and that "[a]ny other unresolved dispute arising out of th[e] Agreement must [likewise] be submitted to arbitration." (Dkt. No. 1-1 at A0008.) And BMC never argues that the Agreement's arbitration provision is invalid for any reason such as unconscionability or fraud.

The parties' disagreement, then, is limited to the question of whether the matters raised in the California Action "fall[] within the scope of the arbitration agreement." *Hartford Accident & Indem. Co.*, 246 F.3d at 226. It is readily apparent that they do. The gravamen of BMC's complaint in the California Action is that National Union, on eleven specific occasions, "paid defense costs" on behalf of Additional Insureds without an adequate basis for doing so "and now expects [BMC] to reimburse [National Union]" for those costs. (Cal. Compl. ¶ 49.) As relief, BMC seeks a declaration that it "owes no payments to [National Union] for reimbursement" of these costs. (Cal. Compl. ¶ 64.) Clearly, then, BMC disputes its "*Payment Obligation*," which

---

[3] As noted, a 2004 Addendum to the Payment Agreement provides that "any action or proceeding concerning arbitrability, including motions to compel or to stay arbitration, may be brought only in a court of competent jurisdiction in the City, County, and State of New York." (Dkt. No. 1-1 at A0031.) Pointing to this provision, National Union contends that it was entitled to file its Petition to Compel Arbitration in this Court rather than seeking such relief as part of the pending California Action. (Dkt. No. 17 at 6–7.) This Court agrees. *See Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Las Vegas Professional Football Ltd. P'ship*, 409 F. App'x 401, 403 (2d Cir. 2010) (summary order) (concluding that the district court "rightly concluded" on the basis of a similar forum clause "that the proper venue for any action involving the arbitrability of the agreement [at issue] was in New York, because it is what the parties agreed to").

the Payment Agreement defines as "the amounts that [BMC] must pay [National Union] for the insurance and services in accordance with the terms of the *Policies*." (Dkt. No. 1-1 at A0004.) And disputes over the "amount of [the] *Payment Obligation* that [National Union] ha[s] asked [BMC] to pay" are referred to arbitration. (Dkt. No. 1-1 at A0008.)

BMC sees things differently. According to it, National Union's demand for arbitration is a "premature" attempt to "leapfrog over insurance coverage issues that must first be determined pursuant to [the Policies]." (Dkt. No. 21 at 1.) In BMC's view, the question of whether National Union has properly provided coverage to certain Additional Insureds under the Policies—which do not provide for arbitration—is a "threshold issue" that "must be determined by a Court prior to the triggering of any duties or rights under the Payment Agreement." (Dkt. No. 21 at 2.)

The Court is unpersuaded. Certainly, the *reason* that BMC contests the "amount of [the] *Payment Obligation* that [National Union] ha[s] asked [it] to pay" (Dkt. No. 1-1 at A0008) is that BMC disagrees with National Union's coverage decisions under the Policies. But BMC points to no language in the Payment Agreement suggesting that the underlying basis for a payment dispute is relevant to the question of whether that dispute is arbitrable. The Agreement's requirement that the parties submit payment disputes to arbitration, after all, makes no exception for payment disputes that contain embedded coverage disputes. And nothing in the Policies *forecloses* an arbitration panel from resolving a coverage dispute when necessary to resolve a payment dispute properly submitted to arbitration, even if the Policies do not *require* the arbitration of coverage disputes. Because National Union seeks payment in an amount that BMC

disputes, the parties' dispute falls squarely within the Payment Agreement's arbitration provision.[4]

Undaunted, BMC attempts to bolster its position by invoking the Sixth Circuit's decision in *Alticor, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 411 F.3d 669 (6th Cir. 2005), and the Ninth Circuit's decision in *UMG Recordings, Inc. v. Am. Home Assurance Co.*, 378 F. App'x 766 (9th Cir. 2010). In *Alticor*, the Sixth Circuit held that an arbitration agreement contained in a payment agreement between insurer and insured did not require that the court refer a particular payment dispute between the parties to arbitration, where the dispute arose from a disagreement over the proper amount of the insured's deductible under the terms of the underlying insurance policy. *Alticor*, 411 F.3d at 670. In that case, the arbitration provision covered only those disputes that "ar[ose] out of or relat[ed] to" the payment agreement, and the Sixth Circuit concluded that the parties' dispute did not satisfy this criterion because it pertained to "the substantive rights of the parties under the insurance policy" rather than "the mechanics and formalities of premium payment" that made up the subject matter of the payment agreement. *Id.* at 671. Similarly, in *UMG Recordings*, the Ninth Circuit held that a dispute between insurer and insured about the scope of the insurer's duties under an insurance policy "d[id] not arise out of" a separate payment agreement and therefore was not subject to that agreement's arbitration provision. *UMG Recordings*, 378 F. App'x at 767.

---

[4] The Court also finds no merit in BMC's argument that National Union's Petition to Compel Arbitration should be dismissed as unripe. (Dkt. No. 21 at 20–21.) BMC contends that the Payment Agreement's arbitration provision "is not yet, and may never be, implicated" because the California court has not yet resolved the underlying coverage dispute. (Dkt. No. 21 at 20.) But National Union has demanded payment that BMC refuses to make, and this Court need not await any further developments to resolve the question of whether it should be an arbitration panel or a court that decides whether BMC must pay. In asking this Court to await the outcome in the California Action, BMC seeks a backdoor ruling that the California court is the proper forum for the parties' underlying dispute.

The arbitration provision in this case, however, differs materially from those at issue in *Alticor* and *UMG Recordings*. In those cases, the parties had agreed to arbitrate only those matters "arising out of" or "related to" the payment agreement. While the parties here have similarly agreed to arbitrate "dispute[s] arising out of" the Payment Agreement, they have *also* agreed to arbitrate "disagree[ments] . . . about any amount of [BMC's] *Payment Obligation*." (Dkt. No. 1-1 at A0008.) Because the latter provision unequivocally covers the instant dispute, the Court need not reach the question of whether the former provision does the same.[5]

Ultimately, most of BMC's arguments against the application of the arbitration provision boil down to merits arguments related to the underlying payment dispute. For example, BMC argues that the Payment Agreement "is inapplicable when [National Union] has negligently or in bad faith advanced [coverage] payments" and, similarly, that "[p]roper insurance coverage under the Policies is a condition precedent to [National Union's] right to reimbursements." (Dkt. No. 21 at 10–11.) But although BMC might ultimately prevail in establishing that it need not pay the sums National Union has demanded of it, the possibility of such a victory does nothing to change the baseline fact that BMC "disagree[s] with [National Union] about [the] amount of [the] *Payment Obligation* that [National Union] ha[s] asked [it] to pay" (Dkt. No. 1-1 at A0008)—or, put another way, about "the amounts that [it] must pay [National Union] for the insurance and

---

[5] The Court acknowledges that *Aloha Petroleum, Ltd. v. National Union Fire Insurance Co. of Pittsburg, PA*, 25 F. Supp. 3d 1305 (D. Haw. 2014), is not so readily distinguished. In that case, the United States District Court for the District of Hawaii considered a payment agreement apparently identical to the Payment Agreement at issue here and declined to compel arbitration of a payment dispute pursuant to that agreement on the ground that resolving the dispute required determining an insurer's coverage obligations under a separate contract. *See id.* at 1312–15. To the extent that this Court's decision is inconsistent with *Aloha Petroleum*, this Court respectfully declines to follow that case's reasoning. *See Moses H. Cone Memorial Hosp.*, 460 U.S. at 24–25 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

11

services in accordance with the terms of the *Policies*" (Dkt. No. 1-1 at A0004). In happier times, BMC and National Union agreed that such disputes would be resolved in arbitration. Consistent with the FAA, this Court must now hold the parties to that agreement.

**IV.    Conclusion**

For the foregoing reasons, National Union's petition to compel arbitration of the matters raised in the California Action is GRANTED and BMC's cross-motion to dismiss is DENIED.

The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: December 3, 2018
       New York, New York

_____
J. PAUL OETKEN
United States District Judge