Allen R. Wolff
Ethan W. Middlebrooks
ANDERSON KILL, P.C.
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 278-1000
Facsimile: (212) 278-1733
E-mail: awolff@andersonkill.com
E-mail: emiddlebrooks@andersonkill.com

Attorneys for Respondent

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., AMERICAN HOME ASSURANCE COMPANY, THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,<br><br>       Petitioners,<br><br>v.<br><br>BMC STOCK HOLDINGS, INC.,<br><br>       Respondent. | Case No.: 1:18-cv-05777-JPO |

**BMC STOCK HOLDINGS, INC.'S MEMORANDUM OF LAW
<u>IN SUPPORT OF MOTION TO STAY PENDING APPEAL</u>**

               Anderson Kill, P.C.
               1251 Avenue of the Americas
               New York, NY 10020
               Telephone: (212) 278-1000

# TABLE OF CONTENTS

                                                                                                **Page**

I. Introduction ...................................................................................................................... 1

II. Relevant Facts .................................................................................................................. 2

III. Argument ......................................................................................................................... 3

      A. This Court Has Jurisdiction To Consider BMC's Request to Stay ......................... 3

      B. The Court Should Grant BMC's Motion To Stay .................................................. 4

            1. BMC Is Likely To Succeed on the Merits on Its Appeal ........................... 5

                  (a) Ambiguities in the Payment Agreement Should Have Been Construed in BMC's Favor ............................................................. 5

                  (b) The Court Should Have Followed Prior, On Point Case Law ......... 7

            2. The Other Balance of Hardship Factors Favor BMC ................................ 9

                  (a) BMC Will Suffer Irreparable Harm Absent a Stay ....................... 10

                  (b) AIG Will Not Be Uniquely Harmed By a Stay ............................. 11

                  (c) The Public Interest Lies In Favor of a Stay ................................... 11

      C. A Supersedeas Bond Is Not Necessary Here ........................................................ 12

IV. Conclusion ..................................................................................................................... 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13 (1st Cir. 2002) (*per curiam*) .............................. 13

*Aerojet-General Corp. v. Transport Indemnity Co.*,
   17 Cal. 4th 38 (1997) ............................................................................................................. 12

*Aloha Petroleum, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
   25 F. Supp. 3d 1305 (D. Haw. 2014) .......................................................................... 5, 8, 9, 12

*Alticor, Inv. v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, 411 F.3d 669 (6th
   Cir. 2005) ................................................................................................................................. 8

*Augustin v. Nassau Cnty. Sheriff's Dep't (In re Nassau Cnty. Strip Searches)*,
   783 F.3d 414 (2d Cir. 2015) .............................................................................................. 12, 13

*BMC Stock Holdings, Inc. v. National Union Fire Insurance Company of
   Pittsburgh, Pa., et al.*,
   No. 2:18-cv-04726-ODW-RAO (C.D. Cal.) ............................................................................ 2

*Exari Sys. v. Amazon Corp. LLC*,
   No. 15-cv-356, 2015 U.S. Dist. LEXIS 89364 (W.D. Wash. July 9, 2015) ............................. 3

*FDIC v. Ann-High Assocs.* 129 F.3d 113 (2d Cir. 1997) (*per curiam*) ......................................... 12

*Global Live Events – In Liquidation v. Ja-Tail Enters., LLC*, No. 13-cv-8293,
   2014 WL 1830998, 2014 U.S. Dist. LEXIS 63963 (C.D. Cal. May 8, 2014) .......................... 3

*Hayes v. City University of New York*, 503 F. Supp. 946 (S.D.N.Y. 1980), *aff'd on
   other grounds sub nom. Hayes v. Human Resources Admin.*, 648 F.2d 110 (2d
   Cir. 1981) ................................................................................................................................. 5

*Hirschfeld v. Bd. of Elections*,
   984 F.2d 35 (2d Cir. 1993) ....................................................................................................... 4

*Jacobson v. Sassower*,
   66 N.Y.2d 991 (1985) ...................................................................................................... 6, 7, 8

*Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*,
   925 F.2d 556 (2d Cir. 1991) .................................................................................................ꓸ 3, 4

*Mich. Coalition of Radioactive Users, Inc. v. Griepentrog*, 945 F.2d 150 (6th Cir.
   1991) ........................................................................................................................................ 4

## TABLE OF AUTHORITIES
*continued*

**Page(s)**

*Mohammed v. Reno*,
   309 F.3d 95 101 (2d Cir. 1999) ..................................................................................... 4, 5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ................................................................................................................ 8

*Player v. Geo. M. Brewster & Son, Inc.*, 18 Cal. App. 3d 526 (Ct. App. 1971) ......................... 6, 8

*Revson v. Cinque & Cinque, P.C.*,
   221 F.3d 59 (2d Cir. 2000) ............................................................................................. 6, 7, 8

*Rodriguez v. DeBuono*,
   175 F.3d 227 (2d Cir. 1998) ............................................................................................ 4, 9

*UMG Recordings, Inc. v. Am. Home Assurance Co.*, 378 F. App'x 766 (9th Cir. 2010) ............................................................................................................................... 6, 8

*United Comm. Hub, Inc. v. Qwest Comm., Inc.*, 46 F. App'x 412 (9th Cir. 2002) ......................... 3

*Victoria v. Superior Court*, 40 Cal. 3d 734 (1985) ................................................................. 6, 7, 8

*Zurich Am. Ins. Co. v. Wausau Bus Ins. Co.*,
   206 F. Supp. 3d 818 (S.D.N.Y. 2016) ................................................................................ 6

**Statutes**

9 U.S.C. § 10(a)(4) ................................................................................................................ 10, 11

9 U.S.C. § 11(b) ........................................................................................................................ 10

Federal Rule of Appellate Procedure 8(a) .................................................................................. 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.; AMERICAN HOME ASSURANCE COMPANY; and THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,<br><br>Petitioners,<br><br>v.<br><br>BMC STOCK HOLDINGS, INC.,<br><br>Respondent. | Case No. 1:18-cv-05777-JPO<br><br>**BMC STOCK HOLDINGS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY PENDING APPEAL** |

**I.     Introduction**

Respondent BMC Stock Holdings, Inc. ("BMC") files this memorandum in support of its motion to stay pending appeal (the "Motion"). BMC is appealing this Court's December 3, 2018 Order (the "Order") granting the Petition by National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), American Home Assurance Company ("AHA") and The Insurance Company of the State of Pennsylvania ("ICSOP") (National Union, AHA and ICSOP, collectively, "AIG") to compel arbitration.[1]

The Court's Order, respectfully, is contrary to law because it acknowledges the ambiguities present in the documents written by AIG and yet construed them in AIG's favor, and because the Court has erred by ignoring prior case law that is quite closely if not directly on point. In particular, those missteps resulted in the Court's failure to recognize that the insurance coverage issues pled by BMC in the Central District of California are threshold issues to be determined by a court prior to the Payment Agreement ever being triggered. The ambiguities

---
[1] The Order is available as ECF # 28 on the docket.

present in the Payment Agreement, and prior case law construing the same language in that agreement should have resulted in the Court's denial of AIG's motion as a matter of law. The Court's conclusory opinion that reverted to a generalized policy favoring arbitration was in error, as the only agreement containing the arbitration provision does not govern BMC's coverage dispute with AIG. Because the Payment Agreement's repayment provisions had not yet been triggered, the Court erred in considering the Payment Agreement. That error was compounded by giving AIG, the author of the document, the benefit of the doubt on clear ambiguities in it. Due to these errors, BMC believes it is likely to succeed on the merits of its appeal.

Further, the balance of hardships set forth by the Second Circuit weighs heavily in favor of BMC. BMC is likely to suffer irreparable harm; AIG will not bear any unique prejudice; and the public interest weighs in favor of a stay. Therefore, the Court should grant BMC's Motion and stay its Order compelling arbitration pending BMC's appeal.

## II.     Relevant Facts[2]

BMC first brought an action in the United States District Court for the Central District of California seeking a declaration as to insurance coverage and duties owed by AIG under four fronting insurance policies issued by AIG (the "California Action").[3] (*See* ECF # 1-2). AIG, incorrectly contending that BMC's dispute is not one to determine insurance coverage under the insurance policies but instead should be construed as merely a payment dispute under a separate Payment Agreement written by AIG, subsequently filed a Petition to Compel Arbitration (the

---

[2] BMC has set forth in detail elsewhere the factual background significant to this matter, and respectfully refers the Court to the filings and exhibits thereto in this matter for further detail on the background facts.

[3] The California Action is captioned *BMC Stock Holdings, Inc. v. National Union Fire Insurance Company of Pittsburgh, Pa., et al.*, No. 2:18-cv-04726-ODW-RAO (C.D. Cal.). References to filings made in the California Action will be "California Action, ECF. # __".

2

"Petition") in this Court. (ECF # 1). BMC opposed the Petition and cross-moved to dismiss it as not yet ripe. (ECF # 21).

On December 3, 2018, this Court issued an Order granting AIG's Petition and denying BMC's cross-motion. (ECF # 28). In the opinion accompanying the Order, the Court recognized ambiguities inherent in the documents written and issued by AIG, and chose to disagree with the prior ruling of a federal court interpreting the same arbitration provision in a document drafted by AIG in a virtually identical fact pattern as that here. (*See id.*). The Court here instead determined that the general policy favoring arbitration controls, contrary to the specific law applicable to unilaterally written contracts such as insurance policies.[4] (*See id.*). BMC filed a Notice of Appeal to the Second Circuit on December 28, 2018. (ECF # 30). BMC now brings this Motion to Stay the Order pending its appeal.

### III. Argument

#### A. This Court Has Jurisdiction To Consider BMC's Request to Stay

The filing of a notice of appeal ordinarily "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556, 564 (2d Cir. 1991). A

---

[4] The Court in the California Action has requested the parties to submit in writing by January 8, 2019, whether the Court should stay that Action in its entirety pending arbitration. (California Action, ECF # 33, a copy of which is attached as Exhibit A to the Declaration of Allen R. Wolff in Support of BMC Stock Holdings, Inc.'s Motion To Stay Pending Appeal ("Wolff Decl."). BMC believes that, notwithstanding this Court's Order, the California Action need not be wholly stayed as certain issues therein are ripe and must be adjudicated by a court rather than arbitrators. *See Exari Sys. v. Amazon Corp. LLC*, No. 15-cv-356, 2015 WL 4164834, 2015 U.S. Dist. LEXIS 89364, at *8 (W.D. Wash. July 9, 2015) (citing *United Comm. Hub, Inc. v. Qwest Comm., Inc.*, 46 F. App'x 412, 415 (9th Cir. 2002) ("Where both arbitrable and non-arbitrable claims are before a court, the non-arbitrable claims should be stayed only where the arbitrable claims predominate, or where the outcome of the non-arbitrable claims will depend upon the arbitrator's decision.")); *see also generally Global Live Events – In Liquidation v. Ja-Tail Enters., LLC*, No. 13-cv-8293, 2014 WL 1830998, 2014 U.S. Dist. LEXIS 63963 (C.D. Cal. May 8, 2014) (same, and holding that non-arbitrable claims predominate and therefore not staying those claims pending arbitration of arbitrable claim).

3

district court nonetheless may grant a stay of its own order to preserve the status quo, so long as it does not further adjudicate the underlying merits involved in the appeal. *Id.*

Further, Federal Rule of Appellate Procedure 8(a) provides that a party "must ordinarily move first in the district court" for a stay of an order of that district court pending appeal. District courts therefore should exercise their jurisdiction in adjudicating a request to stay on the merits. *See Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 38 (2d Cir. 1993) (finding willful disregard of Rule 8(a) where party seeking stay made "no showing of impracticability of bringing such a motion in the district court"). This Court thus has jurisdiction to consider BMC's Motion and stay its Order pending appeal.

## B.   The Court Should Grant BMC's Motion To Stay

Whether to grant a stay pending appeal is in the discretion of the Court. The Second Circuit has set forth four factors to evaluate in determining whether to grant a stay:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1998). Additionally, the Second Circuit has indicated that the Court may properly "grant[] a stay pending appeal where the likelihood of success is not high but the balance of the hardships favors the applicant . . . [or] where the probability of success is 'high' and 'some injury' has been shown. *Mohammed v. Reno*, 309 F.3d 95 101 (2d Cir. 1999) (citations omitted). Furthermore, the "probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay. Simply stated, more of one excuses less of the other." *Id.* (quoting *Mich. Coalition of Radioactive Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

4

### 1. BMC Is Likely To Succeed on the Merits on Its Appeal

The first factor – likelihood of success on appeal – weighs in favor of a stay pending appeal. The Second Circuit has avoided "setting too high a standard" for the "likelihood of success" factor because "the trial judge is being asked to assess the likelihood that the ruling just made will be rejected on appeal." *Mohammed v. Reno*, 309 F.3d 95, 101 n.8 (2d Cir. 2002) (citing *Hayes v. City University of New York*, 503 F. Supp. 946, 963 (S.D.N.Y. 1980), *aff'd on other grounds sub nom. Hayes v. Human Resources Admin.*, 648 F.2d 110 (2d Cir. 1981)).

Here, *inter alia*, (1) the Court should have resolved the ambiguities in the documents drafted by AIG in BMC's favor and found that arbitration is not appropriate here, and (2) the Court should not have departed from prior, on point case law. Because the Court did so, the December 3 Order is, respectfully, erroneous in that it is contrary to law. BMC thus is likely to succeed on the merits on its appeal.

#### (a) Ambiguities in the Payment Agreement Should Have Been Construed in BMC's Favor

The Court's December 3rd Order acknowledged that there are significant ambiguities in the Payment Agreement drafted by AIG. (*See* ECF # 28 at 7 ("Because the Payment Agreement offers no guidance for determining which questions of arbitrability shall be judicially resolved, and which questions of arbitrability fall within the purview of the arbitrators, this Court cannot conclude that the arbitrability issues presented here are clearly and unmistakably of the latter sort.")). The Court, in its ruling, also noted that the District of Hawaii, addressing the very same issue and the very same agreement drafted by AIG, reached a different, and presumably reasonable, result when interpreting the same language pertaining to arbitrability. (*See id.* at 11 n.5 (citing *Aloha Petroleum, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 25 F. Supp. 3d 1305 (D. Haw. 2014))). This reflects the inherent ambiguity present in AIG's Payment

Agreement, and compels the conclusion that it should reasonably be interpreted in BMC's favor. *See Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 67 (2d Cir. 2000) (citations omitted) (observing that the principle of *contra proferentem* under New York law "holds that 'equivocal contract provisions are generally to be construed against the drafter'"); *accord Zurich Am. Ins. Co. v. Wausau Bus Ins. Co.*, 206 F. Supp. 3d 818, 826 (S.D.N.Y. 2016) (citations omitted) (same); *Jacobson v. Sassower*, 66 N.Y.2d 991, 993 (1985) ("In cases of ambiguity, a contract must be construed most strongly against a party who prepared it, and favorably to a party who had no voice in the selection of its language."); *Victoria v. Superior Court*, 40 Cal. 3d 734, 739 (1985) (same); *Player v. Geo. M. Brewster & Son, Inc.*, 18 Cal. App. 3d 526, 533 (Ct. App. 1971) (same). Such ambiguities demonstrate one reason that the Court's Order directing the parties to arbitrate their dispute is premature. (*See* ECF # 28 at 7 (citing *UMG Recordings, Inc. v. Am. Home Assurance Co.*, 378 F. App'x 766, 767 (9th Cir. 2010) (refusing to compel arbitration of arbitrability issues where the relevant agreement "state[d] that arbitrators have exclusive jurisdiction to resolve questions of arbitrability, but . . . also state[d] that actions concerning arbitrability must be brought in New York courts"))).

Additionally, the California Action is premised on AIG's actions and the obligations owed by AIG to its policyholder BMC under the terms of four insurance policies. (*See* ECF # 1-2). Such claims only involve the interpretation of the insurance policies and do not call for any consideration whatsoever of the separate Payment Agreement. Part of the claims in the California Action concern whether AIG acted in good faith under the policies when it extended coverage to purported additional insureds without adequately investigating if the policies had been triggered, to the detriment of BMC. (*See id.* at ¶¶ 74-89). The Payment Agreement itself provides that it cannot apply when AIG has acted in bad faith under the insurance policies. (*See*

ECF # 1-1 at A0004 ("You must abide by the results of this Agreement of any payment of Loss or ALAE that the claims service provider or we shall have made ***in the absence of negligence and in good faith under any of the Policies***" (emphasis added))). Any question as to whether that provision of the Payment Agreement is merely a defense to payment, as AIG is expected to argue, or a matter for determination as to the reach of the Payment Agreement – which contains the arbitration provision – is an ambiguity that must, as a matter of law, be construed in favor of BMC. *See Revson*, 221 F.3d at 67; *Sassower*, 66 N.Y.2d at 993; *Victoria*, 40 Cal. 3d at, 739. Such a construction would, as a matter of law, render the arbitration provision in the Payment Agreement inapplicable to BMC's bad faith claims in the California Action.

Moreover, as this Court observed, "a court might ***in certain instances*** decide whether a given dispute has been properly submitted to arbitration." (ECF # 28 at 7 (emphasis added)). BMC's claim of AIG's bad faith, already pending in the first-filed California action, is one such instance where a court should adjudicate the issue. The Court's failure to consider that exemption for claims of bad faith was in error.

Given that the principle of *contra proferentem* impacts the interpretation of an ambiguous contract as a matter of law, and AIG's request for this Court to construe the ambiguous Payment Agreement's arbitration provision in its favor, the Court should have construed those pertinent ambiguities against AIG. In so doing, the Court should have ruled in BMC's favor that arbitration was, at least at this time, inappropriate. Therefore, the Court erroneously interpreted the Payment Agreement. On that basis, BMC is likely to succeed on the merits of its appeal, and this Court should stay its Order.

### (b) The Court Should Have Followed Prior, On Point Case Law

Further, *inter alia*, the Court specifically acknowledged yet declined to follow prior case law that is on point, and which involved a nearly if not wholly identical arbitration provision as

7

docs-100084398.1

that at issue here. (*See* ECF # 28 at 11 n.5 (citing *Aloha Petroleum*, 25 F. Supp. 3d 1305). The Court recognized that the prior decision in *Aloha Petroleum* "considered a payment agreement apparently identical to the Payment Agreement at issue here and declined to compel arbitration of a payment dispute pursuant to that agreement on the ground that resolving the dispute required determining an insurer's coverage obligations under a separate contract." (*See id.* (citing *Aloha Petroleum*, 25 F. Supp. 3d at 1312-15)).

Respectfully, instead of providing reasoning as to why it would not follow the District of Hawaii's prior determination of this very issue, this Court ignored the threshold coverage issues determinable solely under the insurance policies and leap-frogged to subsequent issues. Doing so deprived BMC of its right under the insurance policies to have coverage matters determined by a court before payment issues, if any, would be determined by an arbitrator. If, as the Court seemed to believe, the language in AIG's agreements were capable of alternative, reasonable interpretations, then the Court was bound as a matter of law to interpret those provisions in the way that was most favorable to BMC. *See Revson*, 221 F.3d at 67; *Sassower*, 66 N.Y.2d at 993; *Victoria*, 40 Cal. 3d at 739; *Player v. Geo. M. Brewster & Son, Inc.*, 18 Cal. App. 3d at 533-34. Instead, the Court, in a conclusory fashion, deferred to the generalization that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). (*See* ECF # 28 at 11 n. 5). It is clear, however, from reported decisions that this generalization has been subordinated to the rights of AIG's policyholders to litigate their coverage claims under insurance policies in court before being compelled to arbitrate the payment amounts under payment agreements. *See UMG Recordings*, 378 F. App'x at 767; *Alticor, Inv. v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, 411 F.3d 669, 670-74 (6th Cir. 2005); *Aloha Petroleum*, 25 F. Supp. 3d at 1313-15.

This Court should have followed the reasoning of *Aloha Petroleum*, wherein that court recognized that a dispute over rights and duties owed under insurance policies "does not become a 'simple payment dispute' merely because the outcome affects reimbursements." 25 F. Supp. 3d at 1313. It is clear from AIG's correspondence to BMC preceding the California Action and regarding these issues that insurance coverage under the policies is a primary and threshold issue. (*See* ECF # 1-2, Exhibit C at 2 ("However, in asserting your position, you bypass a threshold issue that, before National Union can determine whether it has a duty to indemnify, it must first determine whether it has a duty to defend [purported additional insureds].")). Any analysis of the coverage obligations owed by AIG must necessarily be determined pursuant to the insurance policies, not the Payment Agreement, notwithstanding AIG's attempts to shoehorn coverage questions into a generalized "Insurance Program" and then claim that they are subject to arbitration under a separate Payment Agreement. (*See* ECF # 1 at ¶¶ 10-11; ECF # 17 at 1-3). The insurance policies have no arbitration provision within them, and the Payment Agreement's arbitration provision expressly limits its own reach to disputes that arise under that Payment Agreement. (*Compare* ECF # 22-1, 22-2, 22-3, 22-4 (the insurance policies) *and* ECF # 1-1 (Payment Agreement)). "[E]nforcing the terms of the GL Policy is not a mere payment dispute, or disagreement regarding amounts arising out of the Payment Agreement . . . . The Payment Agreement does not determine the scope of [BMC's] obligations to reimburse [AIG] – the [insurance policies] do[]." *Aloha Petroleum*, 25 F. Supp. 3d at 1313. Thus, the Court's December 3 Order was contrary to law, and BMC is likely to succeed on the merits of its appeal.

### 2. The Other Balance of Hardship Factors Favor BMC

The other three balance of hardship factors (*i.e.*, whether BMC will be irreparably injured absent a stay, whether issuance of the stay will substantially injure AIG, and the public interest, *DeBuono*, 175 F.3d at 234), weigh in BMC's favor. Accordingly, the Court should grant a stay.

9

### (a) BMC Will Suffer Irreparable Harm Absent a Stay

BMC will be harmed if the Court does not grant a stay of its Order. Should arbitration immediately proceed only to ultimately be found by the Second Circuit and/or the Central District of California to be improper, the parties will have needlessly wasted resources arbitrating. For example, should the Court not stay its Order and the parties proceed to arbitration, all while the California Action and the Second Circuit appeal remain pending, the following will occur. First, the parties will have to name and pay a panel of three arbitrators. Second, the parties will have to go through the time, effort and expense of the arbitration proceeding, paying the arbitrators each instance their services are needed. Third, once a ruling is rendered in any arbitration, it will be subject to follow-up motion practice in court, whether it be a challenge to the panel's authority to render a ruling under the Federal Arbitration Act, *see* 9 U.S.C. § 10(a)(4), a request to modify an award made on matters not properly submitted to the arbitrators such as BMC's bad faith claim, *see* 9 U.S.C. § 11(b), or a motion to affirm the judgment. That subsequent motion practice would again have to address the issues currently being appealed to the Second Circuit. Instead, the Second Circuit could and should determine in the first instance whether the parties should go to arbitration on these issues at all—which is the most efficient use of the parties' resources.

Further, the additional insured issues raised in the California Action continue to occur, and are not limited to the purported additional insureds identified in the California Action. This is a repeating issue for BMC in its coverage relationship with AIG. (*See* ECF # 1-2, Exhibit B). A judicial determination as to AIG's duties and BMC's rights under the insurance policies is necessary with regard to these repeating issues. Without such determination, the parties very well may end up undergoing multiple simultaneous proceedings instead of the one action that was first filed by BMC in the United States District Court for the Central District of California.

10

docs-100084398.1

These repeated issues and multiple proceedings will irreparably harm BMC, and could result in inconsistent determinations. Therefore, the Court should stay its Order pending BMC's appeal.

### (b) AIG Will Not Be Uniquely Harmed By a Stay

AIG has not asserted that it will be prejudiced by a stay pending appeal. First, as set forth herein in Section C, BMC has taken out letters of credit in favor of AIG as collateral under the Payment Agreement, thus ensuring that AIG will be able to receive any ultimate funds that are determined to have properly been fronted by AIG to purported additional insureds.[5] (*See* ECF # 1-1 at A0006, A0014; ECF # 1-2 at ¶ 19). And second, should any appellate courts disagree with BMC as to its arguments, AIG will still be able to arbitrate. Accordingly, AIG will not be harmed by a stay.

### (c) The Public Interest Lies In Favor of a Stay

The public interest also weighs in favor of a stay. Although the public interest generally favors prompt resolution of disputes, a dispute is not promptly resolved by an arbitration that is determined on appeal to have been improperly conducted. *See* 9 U.S.C. § 10(a)(4). Indeed, a court has grounds to vacate any arbitration decision when it is found that the arbitrators have exceeded their authority. *See id.* That only forces the parties to incur additional expense and needless delay, and ties up limited court resources in adjudicating post-arbitration motion practice regarding the authority of the arbitrators—an issue to be more quickly decided on appeal.

---

[5] Further, BMC has never contended that AIG is unable to arbitrate valid disputes regarding payments under the Payment Agreement—BMC has argued (and, indeed, brought the California Action for the purpose of adjudicating) that there are insurance coverage considerations to be determined regarding AIG's actions toward purported additional insureds and duties under the insurance policies owed to BMC that are repeated and ongoing issues that must first be determined prior to any payment matters. If coverage is properly extended by AIG and a subsequent dispute as to a payment amount remains, BMC does not deny that such an issue likely is valid for arbitration under the Payment Agreement.

11

docs-100084398.1

Moreover, the issues raised by BMC in the California Action are repeat issues, with an effect on purported additional insureds and litigants in underlying litigation where AIG may contribute defense costs. AIG has a duty to investigate and that duty must be enforced. *See Aerojet-General Corp. v. Transport Indemnity Co.*, 17 Cal. 4th 38, 81 (1997) ("It is settled, and not disputed here, that an insurer's duty to defend includes a duty to investigate the factual allegations of a third-party's claim"). That duty applies to *all* AIG general liability policyholders. The issues to be adjudicated will have a public effect well-beyond BMC's own present dispute with AIG.

Finally, the Payment Agreement and arbitration provision drafted by AIG here are not unique to BMC. *See, e.g., Aloha Petroleum*, 25 F. Supp. 3d at 1312-15. The manner in which the resolution of disputes under insurance policies and associated, separate payment agreements issued by AIG is determined will have a broad impact. Therefore, the public interest lies in favor of a stay pending BMC's appeal.

### C.  A Supersedeas Bond Is Not Necessary Here

BMC does not believe that it needs to post a bond in order for the Court to grant its Motion, given the non-monetary nature of the Order. However, even if the Court disagrees, the Court should exercise its discretion to "waive the bond requirement" because BMC has "'an acceptable alternative means of securing [a] judgment.'" *Augustin v. Nassau Cnty. Sheriff's Dep't (In re Nassau Cnty. Strip Searches)*, 783 F.3d 414, 417 (2d Cir. 2015) (quoting *FDIC v. Ann-High Assocs.* 129 F.3d 113 (2d Cir. 1997) (*per curiam*)). BMC has posted letters of credit in AIG's favor as collateral against the Payment Agreement. (*See* ECF # 1-1 at A0006, A0014; ECF # 1-2 at ¶ 19). Those letters of credit provide more security than the amount AIG claims is at issue in this dispute. (*See* ECF # 1-1 at A0014). Accordingly, no bond should be required here because BMC's "ability to pay [any ultimate monetary judgment] is so plain that the posting

12

of a bond would be a waste of money." *Augustin*, 783 F.3d at 418 (quoting *Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 17 (1st Cir. 2002) (*per curiam*)).

## IV. Conclusion

For all of the foregoing reasons, and because the equities weigh in favor of a stay, BMC respectfully requests that this Court stay its Order compelling arbitration pending BMC's appeal of the Order. BMC further requests that the Court hold that a supersedeas bond is not necessary pending the stay and appeal.

Dated: January 7, 2019

**ANDERSON KILL P.C.**

By: /s/ Allen R. Wolff
Allen R. Wolff, Esq.
Ethan W. Middlebrooks, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 278-1000
Facsimile: (212) 278-1733
E-mail: awolff@andersonkill.com
E-mail: emiddlebrooks@andersonkill.com

*Attorneys for BMC Stock Holdings, Inc.*